N. W. HALSEY & COMPANY, Appellants, v. THE CITY OF
BELLE PLAINE, IOWA, ET AL., Appellees.

**Constitutional law:** MUNICIPAL INDEBTEDNESS: CONSTRUCTION. Section three, Article 11, of the constitution, limiting municipal indebtedness, became self-executing on its adoption, without subsequent legislation to give it force and effect; and such provision can not be extended so as to include cases, the subject matter of which does not bring them within the fair intendment of the language used.

**Same.** In the construction of a constitutional provision the words employed should be given their natural sense in the light of the conditions then existing respecting the evil sought to be limited or guarded against, and for this purpose resort may be had to authentic history, constitutional debates and contemporary legislation relating to such matter.

**Same.** The words "value of the taxable property" of section three, article eleven of the constitution, prohibiting municipal indebtedness in excess of five per cent of the value of the property located therein, refers to the actual value of the property and not to the taxable value thereof as prescribed in Code, section 1305, which provides that property shall be listed at its actual value and assessed at twenty-five per centum thereof.

*Appeal from Benton District Court.*— HON. G. W. BURNHAM, Judge.

THURSDAY, JULY 13, 1905.

ACTION to recover moneys had and received. The opinion states the case. There was a trial to the court without the intervention of a jury, resulting in judgment in favor of defendants. The plaintiff company appeals. *Affirmed.*

*Tom H. Milner,* for appellants.

*S. B. Montgomery* and *J. R. Chambers,* for appellees.

BISHOP, J.— Section 2, chapter 41, page 23, Acts 28th General Assembly, as amended by chapter 43, page 37, Acts 30th General Assembly, provides that " no . . .. municipal corporation . . . shall be allowed to become indebted, in any manner or for any purpose, to an amount in the aggregate exceeding one and one-fourth per centum on the actual value of the property within such . . . corporation, to be ascertained by the last state and county tax list previous to the incurring of such indebtedness: . . . provided, however, that . . . cities of the second class for the purpose of erecting or purchasing water-works and a system of sewers, shall be allowed to become indebted for said purpose to an amount aggregating, with all other indebtedness, . . . in a sum not exceeding two and one-half per centum of the actual value of the property within said city, to be ascertained in the manner and form aforesaid." It is then further provided by the statute that before any such indebtedness can be contracted in excess of $1\frac{1}{4}$ per centum an election shall be held, at which the question of the issuance of bonds for the purposes designated shall be submitted to a vote of the electors of the city. The defendant city of Belle Plaine is a city of the second class in this state, and the defendant W. A. Montgomery is the treasurer thereof. It is conceded that the actual value of the property subject to taxation situated within the limits of said city, as determined by the assessor, and as shown by the state and county tax lists for the year 1903, was the sum of $1,578,576; further, that the total indebtedness of the city, apart from the proposed bond issue, presently to be referred to, was the sum of $80,000. Acting upon the provisions of statute stated foregoing, and in June, 1904, there was duly submitted to the voters of the defendant city a proposition to issue the bonds thereof in the sum of $30,000 for the purpose of erecting a system of water-works and sewers in said city. The proposition received the requisite number of affirmative votes, and was declared to be duly

carried.   Thereafter the city advertised for bids for the purchase of such bonds, and in connection therewith made the requirement that each bidder should accompany his bid with money in the sum of $3,000 as evidence of good faith, and which money, in the case of the successful bidder, should be applied in part payment of the purchase price of the bonds.   The plaintiff company was a bidder for the bonds, and accompanied its bid by a deposit with the defendant Montgomery, as city treasurer, of the sum of $3,000, as required.   Upon the bids being opened, plaintiff was found to be the successful bidder, and the bonds were declared sold to it.   Thereafter tender of the bonds was made, and payment demanded, whereupon plaintiff refused to receive the same and pay therefor.   Such refusal was based upon the sole ground that the indebtedness to be represented by the proposed bonds, added to the indebtedness already existing as against said city, would exceed the debt limit as prescribed by the Constitution of the state.   Plaintiff, in turn, demanded of the city and said Montgomery, treasurer, a return of the sum of $3,000 so deposited by it as above stated.   The demand for a repayment being refused, this action followed.

The constitutional provision invoked by plaintiff, and under which it seeks to justify its refusal to accept of the bonds and predicates its demand for repayment of the deposit money, reads as follows:   " No municipal corporation shall be allowed to become indebted in any manner, or for any purpose, to an amount in the aggregate exceeding five per centum on the value of the taxable property within such' . . . corporation — to be ascertained by the last state and county tax lists, previous to the incurring of such indebtedness."   Constitution, section 3, article 11.   In view of the figures already given, and to bring the case within the operation of such provision, plaintiff also invokes and relies upon the provisions of amended section 1305 of the Code, which reads as follows:   " All property subject to

taxation shall be valued at its actual value . . . and shall be assessed at twenty-five per cent. of such value. Such assessed value shall be taken and considered as the taxable value of such property, upon which the levy shall be made. Actual value of property as used in this chapter shall mean its value in the market in the ordinary course of trade." Precisely stated, the contention of plaintiff is that, as taxes cannot be levied or exacted otherwise than on the basis of taxable value — that is, 25 per cent. of actual value — such taxable value must be accepted as the " value of the taxable property," within the meaning of that expression as found in the Constitution. From this we have the argument that the provisions of the amended act of the Twenty-Eighth General Assembly, under which the defendant city assumed to proceed, in so far, at least, as the same can be said to operate as a grant of authority for an increase of indebtedness beyond the limit of 5 per centum of the " taxable value " of the property in the city, are violative of the constitutional provision, and void. It is the contention of defendants, on the other hand, that the debt limit provision of the Constitution has relation only to the actual valuation of property as the same may be found and returned by the assessor for taxation purposes; accordingly, that an indebtedness which stands the prescribed test in that it does not exceed 5 per centum of the value of the property subject to taxation "valued at its actual value," cannot be held to be violative of such provision.

It thus becomes apparent that we have as the sole question in the case, what basis of valuation, in view of the present statute, must be accepted from which computation

1. CONSTITU-
TIONAL LAW:
municipal in-
debtedness;
construction.
of lawful indebtedness shall be made? It will be observed that the mandate of the Constitution is, " Thou shalt not." The provision, being prohibitive, became self-executing from the moment of its adoption, and hence required no subsequent legislation to give it operative force and effect. *Hyatt v. Allen,* 54 Cal.

353; *State v. Gleason,* 12 Fla. 190; *Trigg v. State,* 49 Tex. 645; *McKusick v. Seymour,* 48 Minn. 158 (50 N. W. 1114). However, as in the case of a statute intended to operate specifically to interdict, or which can be said to be against common right, the operation of the provision cannot be extended so as to include cases the subject-matter whereof does not bring them within the fair intendment of the language employed. *Dively v. Cedar Falls,* 27 Iowa, 228; *Grant v. Davenport,* 36 Iowa, 396; *Council Bluffs v. Stewart,* 51 Iowa, 385; *Davis v. Des Moines,* 71 Iowa, 500; *Orvis v. Board, etc.,* 88 Iowa, 674; *Allen v. Davenport,* 107 Iowa, 90; *Doon Tp. v. Cummins,* 142 U. S. 366 (12 Sup. Ct. 220, 35 L. Ed. 1044).

In proceeding to give construction to a provision of the Constitution, it is of importance that we begin by making ascertainment of the particular object intended to be subserved. To this end we are required primarily 2. SAME. to look to the words employed, giving to them meaning in their natural sense and as commonly understood. If necessary to a fuller understanding, we may place ourselves in touch with the makers of the instrument, and share in their view of the general subject by reading the constitutional debates; also the contemporary legislation, if any, having relation to the subject-matter; we may take note of the evil as manifestly sought to be remedied or guarded against, and of the conditions to be affected, then existing or reasonably to be apprehended in the future, and as disclosed by the authentic history of the state. *McGregor v. Baylies,* 19 Iowa, 43; *Allen v. Clayton,* 63 Iowa, 11; *People v. Gies,* 25 Mich. 83; *Railway v. Taylor,* 52 Wis. 37 (8 N. W. 833); *United States v. Moore,* 95 U. S. 760, 24 L. Ed. 588.

From such sources we learn that when the present Constitution came to be written the cry had already gone up against the reckless and profligate expenditure of public money, whereby many of the municipalities of the State,

while yet in swaddling clothes, had become overburdened with debt. The situation in such respect then existing and to be apprehended for the future was regarded as sufficiently grave by the makers of the instrument to demand the inclusion of a municipal debt limitation clause as part of the supreme law of the State. To effectuate this purpose, it was necessary that a basic line or point be found, at once convenient and just, from which calculations might be made, and the point of limitation fixed. The amount in value of property subject to taxation within any given municipality to be affected was selected as suitable to such purpose. That the selection thus made was arbitrary in character is manifest. As well the aggregate of population might have been taken. In its last analysis, it amounted to no more than fixing the line marking the ebb and flow of municipal wealth as the point from which by measurement the debt limit should in all cases be calculated. It cannot be considered, therefore, that in any sense, or to any extent, it was presently intended to influence, much less control, the matter of making assessment of property, or the placing of values thereon for the purposes of taxation. Moreover, by other provisions of the instrument all matters inhering in the general subject of assessments and taxation were left to be worked out by the Legislature, including the making of alterations as from time to time changed conditions or other considerations might seem to require. And it was then open to view, as it is now, that no such alteration could have the effect to interfere with the operation of the interdiction imposed by the limitation clause in its every essential feature. Now, at the time of the adoption of the Constitution, and for that matter continuing down to the appearance of the present Code, the law of making property assessments for the purposes of taxation recognized no other basis than that of full values. This was known to, and we must assume was in the minds of, the makers of the Constitution. And from this

3. SAME.

it is an easy step to the conclusion that in accepting property valuations as the basis from which computation for limitation purposes was to be made no more was intended, than the meaning conveyed by the literal reading of the provision. If this view be sound, then an observance of such provision involves, first, an inspection of the tax list to ascertain the amount of the taxable property, in value, in the city; and, second, avoidance of debt beyond the limit of five per cent. of such value.

How, then, is the situation affected by the appearance of Code section 1305 upon the statute book? The reason for the enactment of that section is not difficult of ascertainment. It is common knowledge that prior thereto the law on the subject of making assessments was persistently and universally violated, and the purpose and intent of the enactment in question was to secure as nearly as possible a compliance with the law requiring assessors to find and return properties at the full value thereof, and to the end that uniformity might obtain. The provision that taxes should be imposed only on the basis of twenty-five per cent. must be said to have been matter of inducement only. Certainly it was not intended to change the duty of assessors in making assessments. With each of them the duty is now, as before, to enter upon the assessment roll the full value of property, each within his respective district. The difference — and it is the only one — is that when the tax levy comes to be spread upon the treasurer's book a basis of twenty-five per cent. of the assessed or actual value is required to be adopted for the purpose. Such a provision cannot, therefore, be said to change or give a new meaning to the expression as found in the Constitution, " the value of the taxable property." Moreover, the " taxable value " could not, by any reasonable interpretation, be held to be synonymous with, or the equivalent of, " the value of the taxable property." That it was not intended by section 1305 to accomplish more than to bring about uniform-

ity in property valuations for the purposes of taxation finds a measure of confirmation in the provisions of statutes soon thereafter enacted, and which appear as the acts of the Twenty-Eighth and Thirtieth General Assemblies, and to which reference has hereinbefore been made.  Conscious of the basis upon which in fact assessments had theretofore been made, and realizing that assessments at full value would, unless restrained, operate to authorize municipal corporations to largely increase their indebtedness, the limitation acts referred to were adopted.  Such amounted to a legislative construction of section 1305, and should be given weight of authority accordingly.  Lewis' Sutherland on Statutory Construction, Section 472 (2d Ed.).  We are aware that a holding seemingly in conflict with the views as expressed by us above has been made by the Illinois court.  *Chicago v. Fishburn,* 189 Ill. 367 (59 N. E. Rep. 791).  It is sufficient to say that we are not satisfied with the reasoning of the opinion as delivered by that court. Moreover, in that state there is no statute of limitation regulating the subject of municipal indebtedness, as in this state. Accordingly we decline to adopt the conclusion as there reached.

It follows from what we have said that the judgment of the court below must be and it is *affirmed.*