[No. 13260.  *En Banc.*  March 28, 1916.]

# The State of Washington, *on the Relation of the Board of Tax Commissioners, Appellant,* v. James J. Cameron, *Respondent.*[1]

TAXATION—UNIFORMITY—ASSESSMENTS—VALUATION — STATUTES — CONSTITUTIONAL PROVISIONS.  The assessment of property for taxation at fifty per cent of its value, as required by 3 Rem. & Bal. Code, § 9112, does not violate the constitutional provisions (Const., art. 7, § 1, and Id., § 2, as modified by the third amendment) requiring all property to be taxed in proportion to its value, and requiring the legislature to provide by law a uniform and equal rate of assessment and taxation on all property according to its value in money so that every one shall pay a tax in proportion to the value of his or her property; since the fundamental idea is equality and uniformity and the constitution is complied with by assessment of all property at a uniform rate.

SAME—UNIFORMITY—ASSESSMENTS—VALUATION—EXEMPTIONS.  The proviso to such amendment to the constitution authorizing the legislature to exempt personal property to the amount of $300 for each head of a family liable to assessment and taxation permits a deduction only of personal property to the actual value of the amount of the exemption and not an exemption of $300 from the value placed on the property for the purpose of assessment.

SAME—STATUTES—PARTIAL INVALIDITY.  Such proviso, if construed as allowing a reduction of $300 from the valuation placed on the property for the purposes of assessment, may be rejected as repugnant to the constitution without affecting the validity of the balance of the act, as the same is complete in itself; and leads to the conclusion that the proper procedure in making the deduction is to exempt property of the actual value of $300.

SAME — ASSESSMENT—EXEMPTIONS—VALUATIONS—POWER OF STATE TAX COMMISSIONERS.  The board of state tax commissioners has power to order the county assessors, in allowing exemptions to the head of a family, to deduct property of the actual value of $300, rather than to deduct $300 from the value placed on the property for the purpose of assessment; in view of Rem. & Bal. Code, § 9098, giving the board power to exercise general supervision over the system of taxation throughout the state and to exercise supervision

[1]Reported in 156 Pac. 537.

over assessors and county boards of equalization, to the end that all taxable property shall be placed upon the assessment rolls and equalized as between the different counties, etc.

Appeal from a judgment of the superior court for Pierce county, Chapman, J., entered November 24, 1915, upon sustaining a demurrer to the petition, dismissing an action for a writ of mandamus to compel obedience to an order of the board of state tax commissioners. Reversed.

*The Attorney General* and *Edward W. Allen, Assistant,* for appellant.

*F. G. Remann, Harry E. Phelps,* and *A. B. Bell* (*Louis F. Hart,* of counsel), for respondent.

*John B. White* and *William C. Meyer, amici curiae.*

Fullerton, J.—This is an appeal from a judgment of dismissal entered in a proceeding in mandamus instituted by the state board of tax commissioners against the county assessor of Pierce county to compel that officer to obey an order promulgated by the board relative to the manner of making exemptions when assessing personal property for the purpose of taxation.

In the petition for the writ, it is alleged that, for many years past, it has been the practice of county assessors, when assessing property for the purpose of taxation, to take some ratio of value less than the true market value, and assess all property according to such ratio; that in allowing the exemption of three hundred dollars to heads of families, authorized by the constitution and the statutes of the state, the practice of the assessors varies in the different counties; that in some of the counties the true cash value of the personal property is ascertained, the amount of the exemption deducted, and the remainder assessed at the ratio prevailing in the particular county, while in others the property is first valued at the prevailing ratio, the amount of the exemption deducted, and the remainder returned as subject to assess-

ment; that this practice prevailed when the laws required all property to be assessed at its true and fair value in money, and prevails now, when the law provides that property shall be assessed at not to exceed fifty per centum of its true and fair value in money. It is further alleged that this varying mode of assessing property results in inequalities in valuations for assessment purposes, and, to correct the evil, the board of state tax commissioners duly made and promulgated an order, causing it to be served upon all of the county assessors of the state, including the respondent, wherein they directed such assessors, in making exemptions, to pursue the method first indicated, that is, to first ascertain the true cash value in money of the personal property of the person entitled to the exemption, deduct the amount of the exemption therefrom, and assess the remainder of the property at the ratio prevailing in the particular county. It is then alleged that the respondent had announced his intent to refuse to comply with the order, and had announced his intent to assess the property in his county in accordance with the second method before set forth. Further matters are then alleged tending to show that the method adopted by the respondent will exempt from taxation personal property not permitted to be exempted by the fundamental law.

A demurrer to the petition was interposed by the respondent, which the trial court sustained, and after the relator had refused to plead further, a judgment of dismissal was entered, from which this appeal is prosecuted.

Section 1 of art. 7 of the constitution provides:

"All property in the state not exempt under the laws of the United States, or under this constitution, shall be taxed in proportion to its value, to be ascertained as provided by law. . . ."

Section 2 of the same article, as modified by the third amendment, provides:

"The legislature shall provide by law a uniform and equal rate of assessment and taxation on all property in the

state, according to its value in money, and shall prescribe
such regulations by general law as shall secure a just valu-
ation for taxation of all property, so that every person and
corporation shall pay a tax in proportion to the value of his,
her or its property: Provided, That a deduction of debts
from credits may be authorized: Provided further, That the
property of the United States, and of the state, counties,
school districts, and other municipal corporations, and such
other property as the legislature may by general laws pro-
vide, shall be exempt from taxation; and provided further,
That the legislature shall have power, by appropriate legis-
lation, to exempt personal property to the amount of $300
for each head of a family liable to assessment and taxation
under the provisions of the laws of this state of which the
individual is the actual *bona fide* owner."

Prior to the enactment of 1913, the various statutes en-
acted pursuant to the constitutional provisions cited required
all property to be assessed at its true and fair value in
money. Rules for determining the true and fair value were
also prescribed, such, for example, as that the assessor shall
not adopt as a criterion of value the price for which the prop-
erty will sell at auction, or forced sale, or in the aggregate
with all the property in the town or district, but at such sum
or price as he believes the property to be worth in money;
and further, that the cash value of property shall be that
value at which it would be taken in payment of a just debt
from a solvent debtor. The statute relating to exemptions
then provided for an exemption to each head of a family per-
sonal property to the amount of three hundred dollars.

At the legislative session of 1913 (Laws 1913, p. 438, §1; 3
Rem. & Bal. Code, § 9112), that part of the section of the
statute relating to the value at which property shall be as-
sessed was amended so as to read, "all property shall be as-
sessed at not to exceed fifty per cent of its true and fair
value in money"; although the rules for ascertaining the
true cash value were retained. At the same session of the
legislature, the section of the statute relating to exemptions

was also amended, the part thereof relating to the present inquiry being made to read as follows:

"All property described in this section, to the extent herein limited, shall be exempt from taxation, that is to say: . . . Seventh. The personal property of each head of a family or widow liable to assessment and taxation of which such individual is the actual and bona fide owner to an amount of three hundred dollars; Provided, That each person shall list all of his personal property for taxation and the county assessor shall deduct the amount of the exemption authorized by this section from the total amount of the assessment and assess the remainder." Laws 1913, p. 351, § 1, subd. 7 (3 Rem. & Bal. Code, § 9098).

The state board of tax commissioners was created by the legislature of 1905.[1] It was given power and it was made its duty, among other things, to have and exercise general supervision of the system of taxation throughout the state; to exercise general supervision over assessors and county boards of equalization and the determination and assessment of the taxable property in the several counties, cities and towns of the state, to the end that all taxable property in the state shall be placed upon the assessment rolls and equalized between persons, corporations and companies in the several counties of the state and between the different municipalities and counties therein, so that equality of taxation shall be secured according to the provisions of law; to confer with, advise and direct assessors, boards of equalization and county commissioners as to their duties under the law; to prescribe all form books and blanks to be used in the assessment and collection of taxes; to visit the counties of the state and ascertain where existing laws are improperly or negligently administered; to hold meetings in any part of the state for the purpose of investigating matters with which it is charged to supervise, with power to summon witnesses and compel them to testify at such investigation; and finally, by the statute

[1]NOTE:   See Rem. & Bal. Code, § 9085.—REP.

as first enacted, the members of the board were made members of the state board of equalization, which board was given power, in the equalization of state taxes, to raise or lower the assessed valuation placed upon any class of property in any county, so as to make such valuation "equal and uniform, so far as possible, in every part of the state, for the purpose of ascertaining the just amount of tax due from each county for state purposes."

From the foregoing quotations from the constitution, it is made clear, we think, that property need not be assessed at its actual value in money in order to comply with the mandate contained therein. The fundamental idea is equality and uniformity in the rate of assessment, and property may be assessed at an equal and uniform rate, although assessed at some percentage of its value less than its full or actual value. It seems clear to our minds, also, that the exemption provided for in the last proviso to the section quoted (the third amendment to the constitution) permits a deduction only of personal property to the actual value of the amount of the exemption, not an exemption of $300 from the value placed on the property for the purpose of assessment.

Nor do the statutes, when properly construed, conflict with any of these provisions of the constitution. Since the constitutional mandates are aimed at unequal rates, they are complied with when all property within the taxing district is placed on the assessment roll and assessed at the same percentage of value, although the value fixed may be less than. the full value of the property, and although the rate of percentage may not be the same in all of the taxing districts. So it follows that, even if the requirement of the statute that all property shall be assessed at not to exceed fifty per centum of its true and fair value in money be construed to permit each taxing district to choose its own percentage of value less than the maximum fixed, it cannot be said to violate the rule of uniformity and equality, in so far as the particular taxing districts are concerned.

With regard to the district composed of the state at large, the effect of varying valuations is, of course, important, and were the state compelled to adopt these valuations as a basis for the levy for state purposes, state taxation would of necessity be unequal and ununiform. But the state, as the citations we have made to the statutes show, does not rely upon these valuations in levying taxes for its own purposes. It has created the state board of tax commissioners and the state board of equalization, and given the one power to ascertain the extent of these differences, and the other power for state taxation to raise or lower the valuation of any class of property in any county to a value that will make valuations equal and uniform in every part of the state. The final result, therefore, is equality and uniformity in valuation in each particular taxing district, although the percentage of value when measured by the true value may be different in each.

So with the statute providing for the exemption. It will be observed that the statute follows the constitutional mandate in the part preceding the proviso, in that it provides for the exemption of personal property to the amount limited in the constitution, not that all such property shall be assessed at the ratio adopted by the county assessor and the sum of three hundred dollars deducted from the amount of the assessment. The authority for this latter idea is found, if found at all in the statute, in the language of the proviso alone. The language used therein is, it must be confessed, somewhat confusing. Each person is required to list all of his personal property for taxation, and the assessor is required to deduct the amount of the exemptions from the total amount of the assessment and assess the remainder. The confusion arises from the use of the word "assessment." Being prefixed by the article "the," it seemingly refers to something that has been previously stated, but it has no antecedent in any preceding word or phrase unless it be the phrase "list of personal property," which the person is required to furnish the assessor. Construing the word to refer to the

"list" furnished by the owner, the act is within the constitutional mandate, as the requirement then is that the assessor shall deduct actual values to the amount of the exemption and assess the remainder. But, if it is construed to mean that the assessor must first assess all of the property listed at the ratio at which he assesses all personal property and then deduct from the amount thereof $300, it violates the mandate of the constitution, since it authorizes a greater exemption than the amount permitted by that instrument in all instances where such property is not assessed at its actual value.

But if it be said that the proviso will bear no other construction than that last suggested, then we answer that it must be rejected as in violation of the constitution. This can be done without subjecting the remainder of the section to the penalty of unconstitutionality. A proviso repugnant to the enacting part of a statute is void, but it will not avoid the entire act unless it is so closely connected with its subject-matter as to lead to the conclusion that the legislature would not have passed the one without the other. *Nathan v. Spokane County*, 35 Wash. 26, 76 Pac. 521, 102 Am. St. 885, 65 L. R. A. 336; *Shook v. Sexton*, 37 Wash. 509, 79 Pac. 1093. But if it be said that the so-named proviso is not strictly speaking a proviso, but in the nature of an independent clause, the same rule will prevail. An act may be in part beyond legislative authority, and within it for the residue, but if the act is capable of being administered in the parts which are within the power of the legislature to enact, it will be so far valid; unless, of course, the parts are so intimately connected that it cannot be presumed that the legislature would not have enacted the one without the other. *State ex rel. Lindsey v. Derbyshire*, 79 Wash. 227, 140 Pac. 540. In the present instance, the proviso can be rejected and still leave an act complete in itself and capable of enforcement. The legislative intent to exempt property to the value of $300 is clear, and the proviso does no more than suggest a mode of carrying the intent into effect. Since the mode leads to an

unconstitutional result, it can be rejected for some other mode within the power of the taxing officers to provide.

These considerations lead to the conclusion that the method pursued by the respondent in making deductions of exemptions is in violation of both the constitution and statute, and that the proper procedure is indicated in the order of the state board of tax commissioners.

The remaining inquiry is whether that board has power to make such an order. On this question we think the statute leaves no room for doubt. The board is not only given power to exercise general supervision over the system of taxation throughout the state, but to exercise supervision over assessors and county boards of equalization, to the end that all taxable property shall be placed upon the assessment rolls and equalized as between the different counties and municipalities, so that equality of taxation shall be secured according to the provision of law. As we held in *Great Northern R. Co. v. Snohomish County*, 48 Wash. 478, 93 Pac. 924, the power to supervise the work of another means something more than merely to act in an advisory capacity only; that it means power to oversee, inspect and superintend the work of that other, which of necessity includes the power to promulgate general orders for his guidance.

It is our conclusion that the trial court erred in sustaining the demurrer to the petition. The judgment is therefore reversed, and the cause remanded with instructions to overrule the demurrer and proceed to a hearing upon the merits.

Morris, C. J., Mount, Main, Holcomb, Parker, Ellis, and Chadwick, JJ., concur.