[No. 13943.  Department Two.  February 28, 1917.]

C. D. HANSEN, *Respondent,* v. THE CITY OF HOQUIAM *et al.,*
*Appellants.*[1]

MUNICIPAL CORPORATIONS—LIMIT OF INDEBTEDNESS—CONSTITUTION-
AL PROVISIONS—TAXATION—VALUE OF PROPERTY. The constitutional
limit upon municipal indebtedness of "five per cent of the value of
the taxable property therein to be ascertained by the last assess-
ment," does not mean five per cent of the assessed valuation, where
the taxing officers assessed the property at fifty per cent of its
value, as authorized by Rem. Code, § 9112, but means its actual
value, or twice the assessed value as determined by the officers in
arriving at the valuation for the purpose of assessment.

Appeal from a judgment of the superior court for Grays
Harbor county, W. H. Tucker, Esq., judge *pro tempore,*
entered July 1, 1916, upon findings in favor of the plaintiff,
in an action by a taxpayer to restrain the payment of city
warrants.  Reversed.

*Sidney Moor Heath* and *James P. H. Callahan,* for ap-
pellants.

PARKER, J.—The plaintiff, C. D. Hansen, commenced
this action in the superior court for Grays Harbor county
against the defendants, city of Hoquiam and its officers,
seeking to have certain warrants purporting to evidence in-
debtedness of that city adjudged void and their payment en-
joined, upon the ground that the indebtedness so evidenced
was incurred in violation of the limitations upon municipal
indebtedness prescribed by § 6, art. 8, of our state constitu-
tion.  The trial in the superior court resulted in judgment
granting in part the relief prayed for, adjudging certain
of the warrants void and enjoining their payment.  From
this disposition of the cause, the city and its officers have ap-
pealed to this court.

[1]Reported in 163 Pac. 391.

All debts of the city, in so far as they exceeded when incurred, together with other existing debts, one and one-half per cent of the value of the taxable property in the city, have been assented to by three-fifths of the voters of the city voting at validating elections held for that purpose, in pursuance of chapter 120 of the Laws of 1911, p. 614, and chapter 128 of the Laws of 1915, p. 354 (Rem. Code, § 5108a *et seq.*). So our problem is, has the constitutional debt limit of five per cent on the taxable property in the city been exceeded in the incurring of any of the indebtedness evidenced by the warrants here involved, so as to render such indebtedness incapable of being validated by the assent of the voters of the city under § 6, art. 8 of our constitution, reading as follows:

"No county, city, town, school district, or other municipal corporation shall for any purpose become indebted in any manner to an amount exceeding one and one-half per centum of the taxable property in such county, city, town, school district, or other municipal corporation, without the assent of three-fifths of the voters therein voting at an election to be held for that purpose, nor in cases requiring such assent shall the total indebtedness at any time exceed five per centum on the value of the taxable property therein, to be ascertained by the last assessment for state and county purposes previous to the incurring of such indebtedness, except that in incorporated cities the assessment shall be taken from the last assessment for city purposes: . . ."

The trial court, referring to the assessments of property for taxation in the city for the years during which the indebtedness here involved was incurred, found—which finding was not excepted to and is not here questioned—that: "The valuation so fixed for assessment for city purposes was fixed at a ratio of 50% of the actual value of the said property for each of said years." These assessments were made in harmony with Rem. Code, § 9112, reading as follows:

"All property shall be assessed at not to exceed fifty per cent of its true and fair value in money. In determining the true and fair value of real or personal property, the assessor shall not adopt a lower or different standard of value

because the same is to serve as a basis of taxation; nor shall he adopt as a criterion of value the price for which the said property would sell at auction, or at a forced sale, or in the aggregate with all the property in the town or district; but he shall value each article or description of property by itself, and at such sum or price as he believes the same to be fairly worth in money at the time such assessment is made. The true cash value of property shall be that value at which the property would be taken in payment of a just debt from a solvent debtor."

It seems plain, therefore, that it was not only the duty of the assessing officers to determine the real value of the property in fixing its assessed value for purposes of taxation at fifty per cent or less of its real value, but that the assessing officers did in fact fix the assessed value of the property within the city at fifty per cent of its real value. The conditions of our problem are such that if the assessed value so fixed, upon which taxes were to be computed, is the amount which is to become the basis for computation of the constitutional debt limit, then it may be conceded that the five per cent debt limit was exceeded in the incurring of a considerable portion of the debts here involved. On the other hand, it is plain from the record before us that, if the real value of the property within the city as determined by the assessing officers for the years in question is to become the basis for computation of the five per cent debt limit, then such debt limit was not exceeded in the incurring of any of the indebtedness here involved.

What is meant by the words "five per centum on the value of the taxable property therein to be ascertained by the last assessment," as used in the above quoted constitutional provision? Do these words mean five per cent of the amount determined upon by the assessing officers as the basis for computing the amount of taxes to be collected, or do they mean five per cent of the actual value of the property in the city as determined by the assessing officers when such actual value so determined is in fact greater than the amount determined

by them as the basis for the computation of taxes to be collected? In other words, when the assessing officers determine and fix the assessed value of the property for purposes of taxation at a certain percentage of its real value, which determination necessarily requires their determination of its real value, is not such real value so determined the constitutional basis for computing the debt limit prescribed by the constitution? There is no language in the constitution requiring that property shall be assessed for taxation at its real value, but only that property "shall be taxed in proportion to its value," and that there shall be "a uniform and equal rate of assessment and taxation on all property in the state, according to its value in money." Const., art. 7, §§1, 2. In *State ex rel. Board of Tax Com'rs v. Cameron*, 90 Wash. 407, 412, 156 Pac. 537, Judge Fullerton, speaking for the court, in reviewing the revenue provisions of our constitution in so far as they relate to assessment of property for taxation, said:

"From the foregoing quotations from the constitution, it is made clear, we think, that property need not be assessed at its actual value in money in order to comply with the mandate contained therein. The fundamental idea is equality and uniformity in the rate of assessment, and property may be assessed at an equal and uniform rate, although assessed at some percentage of its value less than its full or actual value."

It seems to us that the constitutional limit upon municipal indebtedness does not mean that such debt limit is determinable by taking five per cent of the assessed value as determined by the assessing officers for taxation purposes when such value is by such officers themselves, in pursuance of law and as a matter of fact, determined by taking a certain percentage of the actual value. Such process of arriving at the assessed value necessarily involves a determination of the actual value of the property. The words "value of the taxable property," as used in the constitutional provision above quoted, should we regard them apart from the words, "to be ascertained by

the last assessment," in their natural sense and as commonly understood would plainly mean "actual value" or "market value." Certainly they would mean no less value than this. Do the words, "to be ascertained by the last assessment," which follow, qualify or change this natural and commonly understood meaning? We think not, in view of the fact that no provision of the constitution, as we have seen, requires property to be assessed at any particular measure of value, but only that it shall be assessed at a uniform rate, to the end that taxes shall be in proportion to the value of the property taxed. So that when we have a statute which requires the assessing officers to assess property for taxation "not to exceed fifty per cent of its true and fair value in money," and the assessing officers do in fact assess it at fifty per cent of its true value, then, by a simple rule of arithmetic, its real value is as certainly ascertained by the assessment as if it had actually been assessed at its real value. If there were no statute in our state prescribing that the assessed value shall not exceed fifty per cent of the true value, in the absence of a showing that the assessing officers assessed the property at some percentage of its true value, it would probably be presumed, as a matter of law, that the assessed value was also the true value, and the municipal debt limit so ascertained. But the conditions of both law and fact attending the making of these assessments plainly tell us that "the value of the taxable property" in the city in each of the years in question was exactly twice the value fixed by the assessing officers for taxation purposes. This, we think, is ascertaining the value "*by the last assessment.*" The constitution does not say that the assessed value shall be the value for the purposes of measuring the debt limit of municipalities. Indeed, there seems to have been deliberate intention on the part of the constitution framers to avoid saying so, in view of the fact that there is no constitutional requirement that property shall be assessed at its full value for taxation. Our conclusion is supported by the decision of the su-

preme court of Iowa in *Halsey & Co. v. Belle Plaine,* 128
Iowa 467, 104 N. W. 494, wherein there was involved a con-
stitutional provision in substance the same as our own, while
the supreme court of Illinois held to the contrary in *Chicago
v. Fishburn,* 189 Ill. 367, 59 N. E. 791. We feel constrained
to view the Iowa decision as being supported by the better
reason.

It would seem from the record before us that the learned
trial court would have reached the same conclusion we here
reach had it been of the opinion that the basis for computing
the debt limit was the real value of the property within the
city as determined by the assessing officers instead of its as-
sessed value, as determined by the assessing officers, for the
purpose of taxation. Our view upon this question makes it
unnecessary for us to notice other questions which seem to
have been considered by the trial court. We have not been
favored with a brief in behalf of respondent. We conclude
that the judgment must be reversed, leaving the city and its
officers free to recognize and pay the warrants here involved
as evidencing valid indebtedness of the city. It is so ordered.

MORRIS, MOUNT, FULLERTON, and HOLCOMB, JJ., concur.