[No. 15260.  *En Banc*.  March 10, 1919.]

## HUGH ELDRIDGE, *Respondent,* v. THE CITY OF BELLINGHAM *et al., Appellants.*[1]

MUNICIPAL CORPORATIONS (536)—FISCAL MANAGEMENT — TAXES— LIMITATION OF AMOUNT—CHARTER AND STATUTORY PROVISIONS—ACTUAL OR ASSESSED VALUE.  A charter limitation to the effect that the aggregate of all taxes levied for city purposes shall not exceed eight mills "on each dollar of valuation of taxable property," means the actual, rather than the assessed, value; hence where the assessed valuation of a city is forty per cent of its actual value, a tax levy thereon of thirteen mills does not exceed the charter limitations; nor would the addition of a port tax of 1.06 mills on the assessed valuation exceed the limitation.

CHADWICK, C. J., and MACKINTOSH, J., dissent.

Appeal from a judgment of the superior court for Whatcom county, Smith, J., entered February 11, 1919, in favor of the plaintiff, upon overruling a demurrer to the complaint, in an action to recover a tax paid under protest.  Reversed.

*Walter B. Whitcomb, D. W. Featherkile,* and *Loomis Baldrey,* for appellants.

*Hadley & Abbott,* for respondent.

MITCHELL, J.—Hugh Eldridge, respondent, paid, under protest, general taxes levied in the year 1918 upon his property, in the city of Bellingham, and then instituted this action to recover the excess over what he claims the city had the power to levy and collect. There was judgment in his favor, and defendants appeal.

Bellingham is a city of the first class, and is divided into seven assessment districts, viz., A, B, C, D, E, F and G.  Relative to the assessment of property for

[1]Reported in 179 Pac. 109.

the purpose of taxation, §§ 1 and 2, art. 7, of the constitution provide:

"Sec. 1.  All property in the state not exempt under the laws of the United States, or under this constitution, shall be taxed in proportion to its value, to be ascertained as provided by law.  . . .

"Sec. 2.  The legislature shall provide by law a uniform and equal rate of assessment and taxation on all property in the state, according to its value in money,. and shall prescribe such regulations by general law as shall secure a just valuation for taxation of all property, so that every person and corporation shall pay a tax in proportion to the value of his, her, or its property:  . . ."

The power to levy and collect taxes for municipal purposes is provided for by § 12, art. 11, and § 9, art. 7, of the state constitution, while § 7507 of Rem. Code, Laws of 1890, page 218, § 5, empowers cities of the first class to provide for levying and collecting taxes on real and personal property for corporate uses and purposes.  The city of Bellingham is governed under a freeholders' charter adopted in the year 1904.  Two sections of its charter pertinent to this case are as follows:

"Sec. 346.  The aggregate of all taxes levied for city purposes; exclusive of bond interest and sinking fund levies, shall not exceed in any one year, eight mills on each dollar of valuation of taxable property. The City Council also has the power and authority, at the same time the other levy or levies of all taxes are made as provided in this section, to levy the taxes necessary to pay the interest accruing during the year on the bonded indebtedness of the city, and for the payment or redemption of the bonded indebtedness of the city.

"Sec. 276.  The City Council shall levy annually not less than one-half of one mill for park purposes, and shall further have power to set aside all, or any por-

tion of such annual levy, for a period of years, as a sinking fund to be used by ordinance, for acquiring and improving land for park purposes.''

With reference to the steadfastness of a city charter, we take notice that, while our constitution, § 10, art. 11, has reserved to the people of cities of the class to which Bellingham belongs, the right and power to frame and adopt charters for their city government, such charters, nevertheless, *"shall be subject to and controlled by general laws."* From the year 1893 until the year 1913, Rem. & Bal. Code, § 9112, was in force, and it provided:

''All property shall be assessed at its true and fair value in money. In determining the true and fair value of real or personal property, the assessor shall not adopt a lower or different standard of value because the same is to serve as a basis of taxation; nor shall he adopt as a criterion of value the price for which the said property would sell at auction, or at a forced sale, or in the aggregate with all the property in the town or district; but he shall value each article or description of property by itself, and at such sum or price as he believes the same to be fairly worth in money at the time such assessment is made. The true cash value of property shall be that value at which the property would be taken in payment of a just debt from a solvent debtor.''

Thus the law remained until the legislative session of 1913, when § 9112 of Rem. & Bal. Code, just quoted, was re-enacted with the important exception that the first sentence thereof was made to read:

''All property shall be assessed at *not to exceed fifty per cent of* its true and fair value in money.'' Rem. Code, § 9112.

In the year 1918, the board of equalization of the assessment of property in the city of Bellingham, which by § 9288 of Rem. Code, consisted of the three

county commissioners and three members of the city council, equalized the assessments of city property returned by the county assessor. Upon receiving from the county assessor the certified equalized assessment roll, the city of Bellingham, pursuant to § 9281, Rem. Code, enacted an ordinance No. 3232, approved by the mayor October 8, 1918, fixing the rate of taxes to be levied, and levied taxes for all city purposes upon all taxable property, both real and personal, in the city, subject to taxation therein. The title of the ordinance is:

"An ordinance determining the amount of taxes necessary to be levied for all purposes for the city of Bellingham and various taxing districts thereof for the year 1919, and levying the same upon the assessed valuation of the property subject to taxation within said city."

For park purposes the ordinance provides as follows:

"Section 9. That the sum of eleven thousand six hundred fifty dollars ($11,650) shall be and hereby is levied upon the assessed valuation of all taxable property, both real and personal, within assessment districts 'A', 'B', 'C', 'D', 'E', 'F' and 'G' in the city of Bellingham, for park purposes, which said amount is one and six hundredths (1.06) mills on each and every dollar of value assessed and equalized for the year 1919 . . ."

For general current expenses of the city, the ordinance provides:

"Section 10. That there be and hereby is appropriated the sum of one hundred fifty-nine thousand three hundred forty-four and eighty-one hundredths dollars ($159,344.81) for general current expenses for the city of Bellingham, for the year 1919; which sums are in detail as follows: (itemized purposes and amounts)

"Total ............................$159,344.81

"Less miscellaneous receipts, account of licenses, surplus, fines, fees, and other sources, $13,685; which sum of $13,685, the amount estimated to accrue to the city of Bellingham, during the ensuing year from licenses, fines, fees, surplus and other sources, to wit: the sum of one hundred forty-five thousand six hundred fifty-nine and eighty-one hundredths ($145,-659.81) dollars be, and hereby is, levied upon the assessed valuation of all taxable property, both real and personal, which assessed valuation is *forty per cent of valuation* of all taxable property, both real and personal, within assessment districts 'A,' 'B,' 'C,' 'D,' 'E,' 'F,' and 'G' in the city of Bellingham, for the purpose of paying the general expenses of said city for the ensuing year; which aggregate sum of one hundred forty-five thousand, six hundred fifty-nine and eighty-one hundredths ($145,659.81) dollars is *13 mills* on each and every dollar of value assessed and equalized for the year 1919, within said districts 'A,' 'B,' 'C,' 'D,' 'E,' 'F,' and 'G,' said total of assessed valuation being eleven million, two hundred four thousand, six hundred one and no-100 ($11,204,-601) dollars, which is *40 per cent of valuation* of all taxable property both real and personal within said districts 'A,' 'B,' 'C,' 'D,' 'E,' 'F,' and 'G.' "

In keeping with the declaration in the city ordinance fixing the tax levy, the complaint alleges and the court found that the assessed valuation, as equalized by the board and certified by the county assessor to the comptroller of the city, was *forty* per cent of the *actual* value of the property.

Generally speaking, the vital question in this case is, whether the city, in its tax levy, exceeded its charter limitation. More precisely stated, appellants contend that the *actual* value of the property constitutes the basis upon which the validity of the levy rests; and that, where the assessment as equalized is confessedly but forty per cent of the actual value of the

property, a levy thereon of *thirteen* mills does no violence to any general law, and is within the limitation of § 346 of the city charter to the effect that the aggregate of all taxes levied for city purposes shall not exceed *eight mills on each dollar of valuation of taxable property.* On the other hand, respondent contends the levy not to exceed eight mills must be computed upon the amounts fixed by the assessor and the board of equalization.

Words cannot be used to declare the proposition that there is a difference between the word "assessment" and the word "valuation" more clearly than the language of the 1913 statute that "All property shall be *assessed* at not to exceed fifty per cent of its true and fair *value* in money." Rem. Code, § 9112. Under the old law, which required all property to be assessed at its true and fair value in money, it would be otherwise if the law were obeyed in making the assessment; for then the two words, as to results, would mean the same thing. Nor may the two words be used interchangeably in the present case; for, by the complaint, the ordinance, and the finding of the court it is asserted that the assessment as equalized is only forty per cent of the actual value of the property.

Sections 1 and 2, art. 7, of the constitution, cited by the respondent and already noticed herein, do not solve our problem, and are considered here to show that, according to the construction placed on them by this court, they are not a limitation upon the power of the legislature to prevent the enactment of such a law as that of 1913 requiring property to be *assessed* at not to exceed fifty per cent of its true and fair *value,* and thus make and mark a distinction between assessment and valuation. Speaking of those consti-

tutional provisions, in the case of *State ex rel. Board of Tax Commissioners v. Cameron,* 90 Wash. 407, 156 Pac. 537, it was said:

"From the foregoing quotations from the constitution, it is made clear, we think, that property need not be assessed at its actual value in money in order to comply with the mandate contained therein. The fundamental idea is equality and uniformity in the rate of assessment, and property may be assessed at an equal and uniform rate, although assessed at some percentage of its value less than its full or actual value."

However, laying aside the matter of equality and uniformity of assessment, and coming more directly to the question here, it seems to us the reasoning in the case of *Hansen v. Hoquiam,* 95 Wash. 132, 163 Pac. 391, is helpful in this case. In that case, the court considered the question of the constitutional limitation upon municipal indebtedness, and the trial court found, without exception or question, "that the valuation so fixed for assessment for city purposes was fixed at a ratio of fifty per cent of the actual value of the said property for each of said years;" and the question was whether the five per cent limit fixed by the constitution should be figured on the assessed or the actual value of the property. The court held the *actual* value and not the *assessed* value was the proper basis, and, among other things, in discussing the case, said:

"So that when we have a statute which requires the assessing officers to assess property for taxation 'not to exceed fifty per cent of its true and fair value in money,' and the assessing officers do in fact assess it at fifty per cent of its true value, then, by a simple rule of arithmetic, its real value is as certainly ascertained by the assessment as if it had actually been assessed at its real value."

To the same effect see *Halsey & Co. v. City of Belle Plaine,* 128 Iowa 467, 104 N. W. 494; and *Nash Co. v. Council Bluffs,* 174 Fed. 182.

The soundness of that reasoning cannot be gainsaid, and when applied to this case, we find that, when the assessor and the board of equalization, and the city by its ordinance, determined a given sum to be forty per cent of the *actual* value of the taxable property in the city of Bellingham, by that same expression of judgment, we are at once told, by a simple rule of arithmetic, the sum which equals its actual value.

Having thus found its actual value, it is clear that a levy thereon of eight mills for city purposes, permissible under § 346 of the city charter, would amount to more than the levy actually made of thirteen mills on the assessed valuation as certified. The levy of thirteen mills was made because it was to be extended upon records showing assessed values of only forty per cent of the actual values, but the name and form given to the transaction are unimportant, if not contrary to results within the power conferred by the city charter.

It is argued by counsel for respondent that § 346 of the city charter, in speaking of the levy not to exceed "eight mills on each dollar of valuation of taxable property," must be construed as meaning "eight mills on each dollar of *assessed* valuation of taxable property." The fact that the construction contended for would materially alter the results argues, of itself, that there is such a difference between the meaning of the words "valuation of taxable property" and "*assessed* valuation of taxable property," that we are not permitted, under the guise of construction, to import into the section the word "assessed" to limit or qualify the word "valuation." It is true that,

in 1904 when the charter was adopted—if we assume that the county assessor obeyed the law and assessed the property at its true value—at that time the charter would have meant the same whether the word "assessment" or the word "valuation" was used; but the fact that the general law has been since so changed that the two words are no longer synonymous in this respect affords no reason to hold that the word "valuation," which then and now means the same thing, should be lifted out of the charter, and the word "assessment" or the words "assessed valuation," that now mean a different thing from what they did formerly, should be substituted therefor. We must stay by the language used in the charter.

Respondent calls attention to the distinction between the "value of taxable property" and "taxable value of property" as pointed out in the case of *Halsey & Co. v. City of Belle Plaine, supra.* That decision could not have been well written otherwise, because § 1305 of the Iowa Code provides:

"All property subject to taxation shall be valued at its actual value . . . and shall be assessed at twenty-five per cent of such value. Such assessed value shall be taken and considered as the taxable value of such property, upon which the levy shall be made. Actual value of property as used in this chapter shall mean its value in the market in the ordinary course of trade."

It will be seen from that case at a glance that the "value of the taxable property" is its actual value—this according to the rule—while according to the statute it must be *assessed* at twenty-five per cent of such value, which *assessed* value shall be taken as the "*taxable value*" of such property upon which the levy shall be made. But that case furnishes us no light in this case, for here our important and final inquiry is not

so much how to arrive at the value of the property, but rather upon which value—the assessed value or the actual value—must the levy be computed. In Iowa, under its statutes, the levy would be upon twenty-five per cent of the actual value of the property because the statute so directs; but in the city of Bellingham the levy must be upon the valuation—not assessment—of the taxable property, because the city charter says so.

It is further contended the levy of one and six-hundredths (1.06) mills for park purposes is unwarranted. Section 276 of the charter provides:

"The City Council shall levy annually *not less than* one-half of one mill for park purposes."

It is argued, however, that, because § 346 of the city charter provides that the aggregate of all taxes levied for city purposes shall not exceed in any one year eight mills, therefore the city had no right to levy a separate fund for park purposes; but that the same must be taken care of, if at all, by the levy of eight mills for general city purposes. Admitting, without deciding, there may not be such special fund for park purposes, it is manifest that this levy of one and six-hundredths (1.06) mills added to the thirteen (13) mills levy already referred to, both based upon the equalized assessed value of forty per cent of the actual value of the taxable property, together, are well within the eight-mill levy on the value of the taxable property as provided in § 346 of the charter. Under a law such as § 346 of the charter of the city of Bellingham, power to levy taxes for city purposes, so far as the value of the property is concerned, is controlled by the *actual* rather than the *assessed* valuation of the property; and the designation of a specified number of mills of a higher numerical order than the number

stated in the charter levied upon the assessment as equalized will not disturb the validity of the tax provided the tax thus levied is within an amount which would equal a levy of eight mills, allowed by the charter, upon the actual value of the property.

The judgment is reversed, with directions to the lower court to dismiss the action.

MOUNT, HOLCOMB, MAIN, FULLERTON, and TOLMAN, JJ., concur.

MACKINTOSH, J. (dissenting)—I am of the opinion that the levy must be upon the "assessed valuation" and not upon the "valuation" of the taxable property subject to the city charter provision.

I agree with the majority that "assessment" and "valuation" are not synonymous; I am convinced, however, that assessment is an essential incident of valuation in the general and ordinary use of that word in the statutes of taxation. This, to my mind, is the distinction of the case.

As ordinarily used in taxing laws, the word "valuation" implies assessment. A naked valuation is an anomaly in tax law. Valuation, as applied to taxation, is always determined by incidents peculiar to itself alone; valuation as used in the market, taking the word alone, is not identical with valuation as used in a taxation statute; each has acquired separate and acknowledged connotations. Section 9091, Rem. Code, expressly enjoins that "all property . . . shall be subject to assessment and taxation"—possibly not a deliberate, but, nevertheless, a definite recognition of the inseparability of the two. Whether one speaks of "taxable value" or the "value of taxable property," while not identical terms, still one is speaking in each case of property considered as the subject of present

or possible taxation, a very distinct concept from property considered as the subject of trade or realty transactions. When a subject is spoken of from a particular perspective, the actual and implied connotations are integral to that perspective.

When, therefore, the city charter speaks of "eight mills on each dollar of valuation of taxable property," such valuation cannot logically be the arbitrary valuation of the owner or the unqualified judgment of the council or voters, but necessarily is the value determined by the taxing executive as a whole, of whom the assessor is an essential factor and without whose co-ordinate effort there can be no valid levy.

The respondent would, no doubt, concede that this is the general construction of the term, but claims the right to read into the charter provision a particular principle which, as accepted by the majority, would make the disputed section read something as follows: "Eight mills on each dollar of real value as determined by the assessors, not of assessed value as determined by the assessors for the purposes of taxation." To state such a conclusion is almost to refute it. It seems a clear contradiction of the established principles of statutory construction to strain the meaning of a common and accepted expression in such a way. The recent case of *Hansen v. Hoquiam,* 95 Wash. 132, 163 Pac. 391, relied upon by the respondent as lending some support to its position, is only appropriate here if the unusual and strained meaning contended for by the respondent is accepted.

I therefore dissent.

CHADWICK, C. J., concurs with MACKINTOSH, J.