## BOARD OF EDUCATION, Rich County School District v. PASSEY.

No. 7810.   Decided August 8, 1952.   (246 P. 2d 1078.)

*Romney, Boyer & Bertoch, Marvin J. Bertoch,* Salt Lake City, for plaintiff.

*Grant C. Aadnesen, Clinton D. Vernon,* Atty. Gen., Salt Lake City, amicus curiae, for respondent.

WOLFE, Chief Justice.

This is an original proceeding to compel the defendant, clerk of the Board of Education of the Rich County School District, to sign certain school building bonds in the amount

of $185,000 which are sought to be sold by the Board. The defendant's refusal to sign the bonds is predicated upon his belief that their sale would incur an indebtedness on the part of the School District in excess of its constitutional debt limitation. The sole question for our determination is whether the debt limitation imposed upon school districts by Article XIV, Section 4 of the Constitution of Utah is (1) four percent of the reasonable fair cash value of the taxable property in the district, or (2) four percent of the assessed valuation of the taxable property therein.

Article XIV, Sec. 4, so far as is pertinent here, provides:

"When authorized to create indebtedness as provided in Section 3 of this Article, no county shall become indebted to an amount, including existing indebtedness exceeding two per centum. No city, town, school district or other municipal corporation, shall become indebted to an amount including existing indebtedness, exceeding four per centum of the value of the taxable property therein, the value to be ascertained by the last assessment for State and County purposes, previous to the incurring of such indebtedness; * * *."

From territorial days to 1947, the statutes of Utah provided for the assessment of all taxable property at its full cash value. See Sec. 80-5-1, Utah Code Annotated 1943. However, in 1947 the Legislature amended the above mentioned statute to provide that all taxable property "must be assessed at forty percent of its reasonable fair cash value." See Chap. 102, Laws of Utah 1947. The question which gives rise to this case was precipitated when the Legislature in 1951 amended Sec. 75-13-12, U. C. A. 1943, to provide that school districts may not incur indebtedness in excess of "four percent of one hundred percent (100%) of the reasonable fair cash value" of the taxable property in the district. See Chap. 84, Laws of Utah 1951. Before amendment, this statute provided simply that the debt limitation for school districts of the class of Rich County should be "four percent of the value of taxable property" in the district. It is the defendant's position that in view of the 1947 amendment to Sec. 80-5-1, U. C. A. 1943, school

districts may not become indebted in excess of four percent of forty percent of the reasonable fair cash value of the taxable property in the district and that Sec. 75-13-12, U. C. A. 1943, is amended by Chap. 84, Laws of Utah 1951, authorizing school districts to incur indebtedness up to four percent of one hundred percent of the reasonable fair cash value of the taxable property therein contravenes Article XIV, Sec. 4 of our state constitution, set out above.

The defendant's contention cannot be sustained. The language of Article XIV, Sec. 4 is clear and unambiguous. It establishes as a debt limitation "four per centum of the value of the taxable property" in the district. The word "value" is not limited or qualified by any adjectives. It does not read "assessed value" or specify any other particular kind of value. The word "value" standing by itself can have only one meaning, viz. the full worth or actual value— not a fractional share thereof. *Hansen* v. *City of Hoquiam*, 95 Wash. 132, 163 P. 391. The direction in the phrase following that the "value" be "ascertained by the last assessment for State and County purposes, previous to the incurring of such indebtedness" is not a mandate that the assessed valuation upon which taxes are computed be adopted as the "value." What is meant by that phrase is that the last assessment is the source for finding what is the amount of the "value." But it does not say that the assessed valuation is the "value." Where an assessor is directed by law to assess property at a percentage or fraction of its fair cash value as is the case in this state, he must nevertheless first determine the actual value of the property and then take a percentage or fractional share thereof as the "assessed valuation" for tax purposes. It would seem impossible for an assessor to determine what is a certain percentage or fractional share of the actual value of a piece of property without first determining what is the full or actual value. Thus the actual value is determined by the assessor in making his assessment even though the "assessed valuation" upon which taxes are computed is less than the

actual or full value, and from the last assessment the full "value of the taxable property" could be ascertained as readily as the assessed valuation.

In this construction of Article XIV, Section 4, we are supported by decisions from the Supreme Courts of Iowa and Washington wherein substantially identical constitutional provisions were construed. In *N. W. Halsey & Co.*, v. *City of Belle Plaine*, 128 Iowa 467, 104 N. W. 494, 495, the constitutional provision in question provided:

> " 'No municipal corporation shall be allowed to become indebted in any manner, or for any purpose, to an amount in the aggregate exceeding five per centum on the value of the taxable property within such * * * corporation—to be ascertained by the last state and county tax lists, previous to the incurring of such indebtedness.' "

By statute all property subject to taxation was directed to be "valued at its actual value" and to be " 'assessed at twenty-five percent. of such value.' " The court held that under no reasonable interpretation could the expression, " 'the value of the taxable property,' " found in the Constitution be held to be synonymous with, or the equivalent of, the assessed or taxable value upon which taxes are computed.

In *Hansen* v. *City of Hoquiam*, supra, the pertinent constitutional provision, Art. 8, § 6, prohibited municipal corporations from incurring indebtedness in excess of

> " 'five per centum on the value of the taxable property therein, to be ascertained by the last assessment for state and county purposes previous to the incurring of such indebtedness * * *.' "

By statute all property was directed to be assessed at "not to exceed 50 percent. of its true and fair value in money." The court in following the decision in *N. W. Halsey & Co.* v. *Belle Plaine*, supra, said:

> "It seems to us that the contitutional limit upon municipal indebtedness does not mean that such debt limit is determinable by taking 5 per cent. of the assessed value as determined by the assessing offi-

cers for taxation purposes when such value is \* \* \* determined by taking a certain percentage of the actual value. Such process of arriving at the assessed value necessarily involves a determination of the actual value of the property. The words 'value of the taxable property,' as used in the constitutional provision above quoted, should we regard them apart from the words, 'to be ascertained by the last assessment,' in their natural sense and as commonly understood would plainly mean 'actual value' or 'market value.' Certainly they would mean no less value than this. Do the words 'to be ascertained by the last assessment' which follow qualify or change this natural and commonly understood meaning? We think not, in view of the fact that no provision of the Constitution, as we have seen, requires property to be assessed at any particular measure of value, but only that it shall be assessed at a uniform rate to the end that taxes shall be in proportion to the value of the property taxed. So, that, when we have a statute which requires the assessing officers to assess property for taxation 'not to exceed 50 per cent. of its true and fair value in money' and the assessing officers do in fact assess it at 50 per cent. of its true value, then by a simple rule of arithmetic its real value is as certainly ascertained by the assessment as if it had actually been assessed at its real value. \* \* \* The Constitution does not say that the assessed value shall be the value for the purposes of measuring the debt limit of municipalities. Indeed there seems to have been deliberate intention on the part of the Constitution framers to avoid saying so, in view of the fact that there is no constitutional requirement that property shall be assessed at its full value for taxation."

The defendant has cited in his brief cases favoring an opposite construction. *State* v. *Tolly,* 37 S. C. 551, 16 S. E. 195; *Smith* v. *Austin,* 200 Ala. 472, 76 So. 404; *Phelps* v. *City of Minneapolis,* 174 Minn. 509, 219 N. W. 872; *State ex rel. School Dist.* v. *Clausen,* 116 Wash. 432, 199 P. 752; *City of Chicago* v. *Fishburn,* 189 Ill. 367, 59 N. E. 791. In all but the last cited case, the pertinent constitutional or statutory debt limitation was provided to be a certain percenage of the "assessed value" or "assessed valuation" rather than of the "value of the taxable property" as determined by the last assessment. Thus, those cases are readily distinguishable from the instant case. In the *Fishburn* case, the constitutional debt limitation construed was

substantially identical to the Utah, Iowa and Washington provisions, being

"five per centum on the value of the taxable property therein, to be ascertained by the last assessment for state and county taxes previous to the incurring of such indebtedness."

By statute property was directed to be assessed at one-fifth of its full value and taxes were computed upon that fractional share. The court held that the debt limit must be computed upon the "assessed value" rather than the actual or full cash value. This construction has been criticized and rejected by the Supreme Courts of Iowa and Washington in *N. W. Halsey & Co.* v. *City of Belle Plaine* and *Hansen* v. *City of Hoquiam,* supra. We likewise must reject it as contrary to the plain wording of the constitution.

Peremptory writ ordered.

WADE, McDONOUGH, CROCKETT and HENRIOD, JJ.; concur.