THE PEOPLE ex rel. Frank A. Carson, County Collector, et al. Appellees, vs. BERT BAXTER et al. Appellants.

*Opinion filed December 21, 1927.*

SCHOOLS—*when detached territory is not liable for bonded indebtedness under section 59 of the School law.* Section 59 of the School law, providing that when territory is detached "from a district that has a bonded debt" the detached territory shall remain liable for its share of the debt, cannot be applied where the territory was detached before the bonds were issued, notwithstanding the bonds had been authorized by an election and by vote of the board of directors and had been dated back prior to the detachment of the territory, as the district did not have a "bonded debt" until the bonds were issued.

APPEAL from the County Court of Winnebago county; the Hon. F. E. CARPENTER, Judge, presiding.

DAVID D. MADDEN, and LORETTA LADEN, for appellants.

NORTH, LINSCOTT, GIBBONEY & NORTH, for appellees.

Mr. JUSTICE FARMER delivered the opinion of the court:

This case is an appeal by Bert Baxter, W. S. Baxter and W. S. Miller from an order of the county court of Winnebago county overruling their objections to taxes to pay school bonds levied by the board of directors of school district No. 111 and rendering judgment for said taxes.

The records of the school district could not be found and the parties entered into a stipulation, upon which the case was tried. By one of the parties it is admitted the stipulation is incomplete, and we agree with that view. The stipulation is the only thing abstracted. The objections filed by appellants are merely indexed, and it has been necessary for us to refer to the record to understand just what the point involved in the controversy is. As we un-

derstand it, the school house in district No. 111 burned
down January 10, 1922, and at an election held the same
month it was voted to re-build the school house. On Feb-
ruary 18, 1922, at an election held on the question of issu-
ing bonds in the sum of $5000 to re-build, it was voted to
authorize the bond issue. Thereafter, on the second day of
March, 1922, at a meeting held by the board of directors it
was voted to issue the bonds in the sum of $5000. Bonds
were not, in fact, issued until the 12th day of June, 1923,
when bonds in the sum of $4500 were issued, dated Au-
gust 1, 1922. It was stipulated that on the 10th day of
April, 1923, the property of objectors was detached from
district No. 111, as provided by statute. That was two
months before the bonds were issued, June 12, 1923, al-
though the bonds when issued were dated August 1, 1922.
The tax certificate of levy for payment of bonds and inter-
est in ten annual installments was made July 31, 1923, and
filed with the county clerk September 22, 1923, but no tax
to pay bonds and interest had been extended for any year
prior to 1926.

Appellants cite no decisions of this State in support of
their contention that their property was not subject to the
tax. Appellees, the collector and the school district, say
the question to be decided is, When does a school district
have a bonded debt? And further say, so far as they have
been able to ascertain the question has never been presented
to this court.

When appellants' property was detached from district
No. 111, on April 10, 1923, the directors of the district
had been authorized by an election to issue $5000 bonds
but had not issued the bonds. The stipulation says the di-
rectors had a meeting March 2, 1922, which was less than
a month after the election authorizing them, and decided
to issue bonds in the sum of $5000. They did not issue
any until June 12, 1923, and then they issued $4500 in
bonds, dated August 1, 1922. No levy was made of any

tax to pay the bonds and interest until July 31, 1923, when the board of directors of district No. 111 passed a resolution or certificate of levy of a direct annual tax sufficient to pay the principal and interest of the bonds maturing during a period of ten years. The county clerk neglected to extend this bond tax until 1926.

Appellants cite from the article on Schools and School Districts, (35 Cyc. p. 1034,) where the author, discussing the effect of a change of boundaries in school district, says the general rule is that if the change in boundaries is made before the tax is levied the transferred territory is not liable to the tax. *Hughes* v. *Ewing,* 93 Cal. 414, and *Jackson* v. *Second School District,* 5 Gray, 413, are cited as supporting that statement. The California case holds that where prior to the change of boundaries the people of the district had voted a sum for building a school house but had not so certified to the board of supervisors until after the change of boundaries, the land detached was not subject to the special tax voted. The Massachusetts case holds that a tax cannot be legally assessed against one whose property has been set off by vote to another district before the assessment is complete.

Appellees contend that under section 59 of chapter 122, (Cahill's Stat. 1925, p. 2158,) being "An act to establish and maintain a system of free schools," the debt became an obligation of district No. 111 when the school directors on March 2, 1922, voted to issue the bonds. That section provides that "in case any territory shall be set off from a district that has a bonded debt  *  *  *  such original district shall remain liable for the payment of such bonded debt, as if not divided." Appellees also cite section 195 of chapter 122, (Cahill's Stat. 1925, p. 2203,) which authorizes the directors of any school district to borrow money and issue bonds when authorized by a majority of the votes cast at an election to purchase a school house site and to build, repair and improve a school house. Appellees also

argue that section 190 of the School act requires the board of directors to determine, annually, how much money must be raised for building purposes for the next ensuing year and certify to the township treasurer on or before the first Tuesday in August, and the treasurer shall file the certificate with the county clerk on or before the second Monday in August, and say the statute does not contemplate that a levy shall be made for money to pay bonds before the bonded debt actually exists, and that a fair construction of section 59 requires only that the board of directors vote to issue bonds, after having been authorized to do so by an election. Certainly no tax is authorized to be levied to pay a bonded indebtedness until there is such an indebtedness, and the question gets back to the one propounded by appellees, When does a school district have a bonded debt? None of the sections of the statute referred to furnish any light upon that question.

School district No. 111 was authorized by vote on February 18, 1922, to issue bonds in the amount of $5000. It is not contended by appellees that the election created a bonded debt, but it is contended that at a meeting of the board of directors on March 2, 1922, it was voted that they issue $5000 in bonds, and from that time the debt existed. We cannot see how a bonded debt was created by that vote any more than it was by the vote of the people authorizing it. In our view the debt existed when the bonds were issued. Two months before they were issued the property of appellants was detached from district No. 111. The bonds were dated back prior to that date, but no tax levy was made until three months after appellants' property was detached.

We are of opinion neither the election authorizing the issuing of the bonds, nor the vote of the board of directors, after the election, to issue them, created a bonded indebtedness of the district. Such indebtedness existed only when the bonds were actually issued, and as the bonds were not

issued until after appellants' property was detached from the district we think it was not liable to be taxed to pay the bonds.

The judgment of the county court is reversed.

*Judgment reversed.*