(No. 26071.— )

LEWMAN L. AUSTIN *et al.* Appellants, *vs.* THOMAS HEALY, Town Clerk, *et al.* Appellees.

*Opinion filed June 13, 1941.*

PYLE & MCCALLISTER, for appellants.

CONGER & ELLIOTT, for appellees.

Mr. JUSTICE MURPHY delivered the opinion of the court:

The plaintiffs, Lewman L. Austin and H. G. Erwin, resident freeholders and taxpayers in the town of Indian Creek, in White county, instituted a suit in the circuit court of that county to enjoin Thomas Healy, clerk, and Charles Reddy, highway commissioner of said town, from issuing and disposing of $16,000 of road bonds which had been voted at an election held pursuant to section 112 of the Roads and Bridges act. (Ill. Rev. Stat. 1939, chap. 121, par. 120.) No attack was made upon the proceedings leading to the election or the manner in which it was conducted.

It was alleged in the complaint that the total assessed valuation of all property in the town as ascertained by the last assessment preceding the election was $665,024. That there was, at that time, an outstanding bonded indebtedness of $32,000, $1,251.20 less than five per cent of the assessed valuation, the maximum limit as fixed by section 12 of article 9 of the constitution. Plaintiffs pleaded that since the $16,000 of bonds would, if issued, exceed

the constitutional limit, that, therefore, the election was void. It was also alleged defendants were threatening to presently issue the full $16,000 of bonds and that if they were not enjoined, their act would increase the town's indebtedness beyond the constitutional limit and thereby damage plaintiffs and other taxpayers.

Defendants answered admitting all matters in reference to the election, the amount of the assessed valuation and the pre-existing indebtedness. They denied the election was void or that they were going to issue bonds immediately in excess of the constitutional limit. As affirmative matter it was stated that $2000 of the pre-existing bonded indebtedness had been paid since the election, thereby increasing the town's margin under the constitutional provision to $3,251.20, and that they proposed to issue immediately $2000 of bonds.

Facts not admitted by the pleadings were stipulated in which it was stated the defendants did not intend to issue $16,000 of bonds at the present time but that their intention was to issue, presently, only $2000, and that in the future whenever the pre-existing bonded indebtedness was reduced so that the amount unpaid and the bonds then to be issued would not exceed the constitutional limit, other bonds would be issued.

The decree appealed from restricted the defendants from borrowing money in excess of the town's constitutional limit of indebtedness, the same to be determined at the time of the issuance of the bonds. For clarification purposes, it was provided in the decree that the defendants could issue bonds from time to time to the amount of the constitutional limit, such limitation to be determined by the assessed valuation and pre-existing indebtedness at the time of issuance of other bonds. Plaintiffs appealed directly to this court.

The pleadings raised two questions, namely: Was the election void, made so because the amount of bonds the

electorate had authorized would, when added to the pre-existing indebtedness, exceed the constitutional limit? Secondly, were the defendants threatening to violate the constitutional provision by presently issuing $16,000 of bonds?

Plaintiffs advance the theory that the action of the electorate authorizing the issuance of $16,000 of bonds fixed an indebtedness upon the town which liability, plus the pre-existing indebtedness, exceeded the constitutional limit and thereby rendered the election void. The position is untenable for it is premised upon the erroneous conclusion that the affirmative vote established an indebtedness against the town.

The language of section 12 of article 9 of the constitution is "No county, city, township, school district or other municipal corporation shall be allowed to become indebted, in any manner or for any purpose, to an amount, including existing indebtedness, in the aggregate exceeding five per centum on the value of the taxable property therein, to be ascertained by the last assessment for State and county taxes previous to the incurring of such indebtedness."

The words "to become indebted" as found in this provision have been before this court for construction in many cases. In *City of Springfield* v. *Edwards,* 84 Ill. 626, it was stated that in considering what construction should be given a constitutional provision or a statute, resort should be had to the natural significance of the words used and in reference to this provision it was said: "There is no difficulty in ascertaining the natural signification of the words employed in the clause of the constitution under consideration, and to give them that meaning involves no absurdity or contradiction with other clauses of the constitution. The prohibition is against becoming indebted— that is, voluntarily incurring a legal liability to pay, 'in any manner or for any purpose,' when a given amount of indebtedness has previously been incurred. * * * It is clear and precise, and there is no reason to believe the con-

vention did not intend what the words convey. A debt payable in the future is, obviously, no less a debt than if payable presently; and a debt payable upon a contingency, as, upon the happening of some event, such as the rendering of service or the delivery of property, etc., is some kind of a debt and therefore within the prohibition. If a contract or undertaking contemplates in any contingency, a liability to pay, when the contingency occurs the liability is absolute—the debt exists—and it differs from a present unqualified promise to pay only in the manner by which the indebtedness was incurred; and, since the purpose of the debt is expressly excluded from consideration, it can make no difference whether the debt be for necessary current expenses or for something else." The reasoning of this case has been applied in *Law* v. *People,* 87 Ill. 385; *Culbertson* v. *City of Fulton,* 127 id. 30; *City of Chicago* v. *McDonald,* 176 id. 404, and other cases.

One of the indispensable elements for putting a municipal bond into effect is the issuance and delivery of the instrument. There is no obligation resting upon the municipality until the bond has been issued and delivered, for the authorization of a bond issue by the electorate creates no contractual obligation. In *People* v. *Baxter,* 328 Ill. 23, certain territory was being detached from a school district under section 59 of the School law and it was necessary to construe the provision "from a district that has a bonded debt" as contained in the law, to determine whether the detached territory should remain liable for a part of certain indebtedness. Previous to the beginning of the detachment proceedings there had been an affirmative vote authorizing the issuance of the bonds. A few days thereafter the board of directors adopted a resolution which provided the bonds should be issued. It was held that neither the election or the action of the board created a debt against the school district. In this case the affirmative vote created no liability against the town. It was not even

a contingent liability. The liability would not arise until there had been a proper issuance of the bonds and such bonds had been delivered.

Plaintiffs' right to injunctive relief on the claim that the defendants' threatened intention to issue $16,000 of bonds is, in a measure, covered by the stipulated fact that they had no such intention but that they expected to issue presently $2000 bonds. If the total bond issue was susceptible of division in this manner, then there was no threatened violation of the constitutional provision proved and plaintiffs would not be entitled to the relief prayed.

The divisibility of the bond issue is dependent upon the statutory power conferred on the town officers and the discretion with which they were clothed in disposing of the bonds. The statute (Ill. Rev. Stat. 1939, chap. 121, par. 120) provides that if there is an affirmative vote on the issuance of bonds, the highway commissioner and the town clerk "shall issue (from time to time as the work progresses) a sufficient amount of said bonds * * * for the purpose of building or repairing roads, bridges or any other work incident to the construction thereof according to the prayer of said petition, as set out thereon." It then provides for the denomination of the bonds, the date, maturity, interest rate, place of payment and directs that they shall "be disposed of as the necessities and convenience of said town may require." It provides that the bonds cannot be issued in more than ten annual series, the first of which shall mature not more than five years from the date thereof and each succeeding series in succeeding years thereafter. The county clerk is required to keep a register of all issues of such bonds and it is his duty to extend a tax sufficient to pay interest and principal of the bonds when issued. There is no showing the money borrowed was to be used on any project or devoted to any particular purpose, except the general direction of the statute that it

was to be used for the general purpose of building, repairing roads, bridges or any other work incident to the construction thereof. Under such circumstances the highway commissioner was vested with a discretion as to the particular roads and bridges that should be improved with the money so borrowed.

The provision in the statute which authorizes the issuance of bonds after the election by the road officers, same to be issued "from time to time as the work progresses" and "as the necessities and convenience of said town may require" gave to the road authorities a discretion as to when the bonds should issue. These provisions, with the further one that the bonds could be issued serially but not in more than ten annual series, indicates a legislative intent to vest in the road authorities a discretion as to when the bonds may issue, even authorizing an extension of the time of issuance and delivery over a series of years. An exercise of such statutory power by the town officers would be subject to the prohibition of the constitution on the debt limitation. The legislature could not authorize them to issue bonds in violation of the constitutional provision and the discretion vested in the town authorities would be restricted to the issuance at a time when they had sufficient margin of indebtedness to be within the constitutional limitation. The fact that the assessed value of the taxable property in the town may fluctuate from year to year can make no difference, provided the town's indebtedness is kept within the constitutional provision which is to be fixed according to the assessed valuation at the last general assessment for State and county purposes preceding such issuance. It may be said that such vesting of power in the town's road officers would permit an electorate to pledge the credit of the town to the full amount of its constitutional limit for a period of several years. The policy of such legislation is a matter for the legislature and not for

the courts. Under the statute, the bonds could properly be issued over a period of years, the amount issued in any year to be subject to the debt limitation at that time.

Under the stipulation and the principles of law announced, the proper decree would have been to dismiss the complaint for want of equity. The attempt, in the decree, to authorize the defendants to issue bonds in the future to meet the debt limitation was ineffectual to confer such authority. The statute gave defendants the power to issue bonds from time to time upon the conditions specified therein. Of course, the exercise of such power was subject always to the inhibition of the constitution.

The decree of the circuit court is reversed and the cause remanded, with directions to proceed in accordance with the views expressed.

*Reversed and remanded, with directions.*