**WORLD FIRE & MARINE INS. CO. v.
PALMER et al.**

No. 13055.

United States Court of Appeals
Fifth Circuit.

June 7, 1950.

Rehearing Denied July 18, 1950.

Wm. H. Watkins, Jackson, Miss., for
appellant and cross-appellee.

William Harold Cox, Jackson, Miss., for
appellees and cross-appellants.

Before HUTCHESON, Chief Judge, and
BORAH and RUSSELL, Circuit Judges.

RUSSELL, Circuit Judge.

This case involves the proper construction and application of the terms and provisions of a policy of insurance against loss of rent. Appellees, hereinafter referred to as the insureds, in 1945, purchased a lot near the business district of Jackson, Mississippi, upon which was located a two story residence building which had been constructed around the year 1900, in at that time, a fashionable residential section. With the growth of the city, the expanded business section encroached upon the premises and surroundings and the building underwent the familiar transformation from home to dwelling house, and from dwelling to boarding house uses, in decreasing degrees of custom and continuous occupancy. As is also usually true in such cases, the physical condition of the building deteriorated, while the land value increased, because of the anticipatory value of the lot for business use. The insureds agreed to pay $40,000 for the property. The house represented a minor part of the purchase price since the lot, 68 by 160 feet, had a value of approximately $30,000.

The lot, under the zoning ordinances of the city, was located in the commercial zone, and this induced its purchase by the insureds, since they planned to dispose of the structure and erect a business building. The insureds rented the property for use as a boarding house until the early part of 1946. At that time, in view of the shortage of space for offices and stores occasioned by the growth of the city and the stoppage of any construction during the war, the building department of the city granted permission for a change of use and occupancy of the building to commercial purposes, but refused permission to make any additions, structural changes, or enlargements. After spending approximately $1600 in repairing the property, the insureds leased quarters in the building to four separate tenants, for a rental aggregating $5,000 annually. The insureds were able to obtain fire insurance on the building in the amount of only $7,500. When changing to commercial use, with substantial rents accruing, they desired additional insurance against loss from fire, but were

informed by the insurance agent that since the structure would justify no additional fire insurance, their best means of protection was to secure a policy of rent insurance. It was understood that there was a real danger that in case of fire, making repairs to the building necessary, the city authorities would not permit such repairs unless the entire building was made to structurally conform to the requirements of the zoning ordinances applicable to commercial buildings in such locations. One of these requirements forbade the making of replacements or repairs in excess of fifty percent of the value of the building. In order to secure the additional protection, the insurance agent contacted many companies and finally secured from the appellant, hereinafter referred to as the insurance company, the policy of insurance against loss of rents upon which the present suit in the trial Court was predicated.

The usual rent-loss policy evidences only an agreement to pay such amount as is sustained by loss of rents occasioned by fire during the time reasonably required to repair the property, computed from a construction standpoint alone. This usual rent policy endorsement, also a part of the present policy, does not provide additional protection in case the insured is unable to secure a permit authority from the city to restore the building. To provide protection for this contingency, the additional

rider or endorsement now involved was issued upon the payment of a one hundred percent additional premium. The policy thus obtained was once renewed and was in force at the time of the fire which damaged the building on June 8, 1948. Thus, at the time of the fire, there was in effect the material provisions of the basic policy,[1] a standard rent endorsement,[2] and a "Demolition and Increased Cost of Construction Clause" endorsement.[3]

After the fire the insureds secured estimates of the cost of repairs in the amount of $6,208 and applied to the proper city authorities for a building permit authorizing them to begin the work. That department, thinking the premises to be in zone one, refused a permit because as to such a building, if in such zone, the municipal ordinances prohibited the repair of a structure which did not conform to the structural type required for new buildings where the cost of repairs exceeded twenty percent of the value of the building. The insureds did not question the correctness of the ruling, though they had thought the building was located in fire zone two. Acting upon the ruling of the city engineering department, the adjuster for the insurance company attempted to settle the liability in accordance with the policy provisions, by the payment of $4200, this being the rentals for twelve months computed on the basis of the rents actually

1. "This Company for the term of one year * * * does insure Bowden L. Palmer and John Bruno, Jr. * * * to the extent of actual cash value of the property at time of loss, not exceeding the amount which it would cost to repair or replace the property with material of like kind and quality within a reasonable time after such loss, without allowance for any increased cost or repair or reconstruction by reason of any ordinance or law regulating construction or repair."

2. "The intention of this insurance is to make good the loss of rents, caused by fire or lightning, actually sustained by the insured on occupied or rented portions of the premises which have become untenantable, for and during such time as may be necessary to restore the premises to the same tenantable condition as before the fire."

"This Company shall be liable for no

greater proportion thereof than the amount hereby insured ($5,000.00) bears to 100% of the actual annual rental for such occupied or rented portion of the premises when such loss shall happen."

3. "In consideration of $75.00 additional premium, this Company shall be liable, in case of loss or damage under this policy, for loss or damage to the interest hereby [insured] occasioned by the enforcement of any State or Municipal law or ordinance regulating the construction or repair of buildings and in force at the time such loss occurs, but the total liability of this Company under this policy shall not exceed the amount for which this policy is issued, nor such proportion as the amount of this policy bears to the total insurance covering on the interest described in this policy, whether such insurance all contains the foregoing clause, or not."

being received at the time of the fire. Settlement was not consummated because the insureds demanded the full $5,000. Approximately two weeks later the insurance adjuster discovered that the property was actually located in fire zone two. In this zone the applicable ordinance permitted repairs up to fifty percent of the value of the property. This information was conveyed to the representative of the city building department, but he insisted nevertheless that the department was not going to issue any permit. The adjuster employed an attorney and made an additional effort to secure the permit, and in the meantime withdrew the offer of $4200, contending that there was no ordinance of the city which prevented the repairs and replacement of the building. Discussion and differences as to the application of the ordinances, as well as of the right of appeal from denial of the permit, continued between the parties, but the matter was not definitely determined. On July 27, 1948, the insureds filed a proof of loss with the insurance company and demanded payment. Suit was filed in November, 1948, claiming a loss of $5,000 covered by the terms of the policy, and in the alternative, for reformation of the policy to carry out the alleged intention of the parties that the policy should cover the loss of rentals "if any governmental agency (with or without cause or justification) refuse a permit to repair or rebuild as before, it is intended that coverage shall apply for duration of loss of rentals until $5,000.00 is expended." The defense was a denial of liability, especially predicated upon the contention that there was no ordinance in force at the time of the loss which could have been enforced to prevent repairs to the building, and that the insureds neglected to make any reasonable effort to repair the building. As to the claim for reformation, the defendant asserted that the policy sought to be reformed was issued in renewal of a prior policy which, together with the policy in suit, had been accepted by the insureds with full knowledge of its contents.

Upon the trial of the case by the Court without a jury, the facts were fully developed. The Court made findings of fact and entered conclusions of law to the effect that both the insureds and the insurance adjuster and his attorney on behalf of the company had proceeded in good faith in an effort to obtain from the city authorities a permit for the repairs to the building. The Court found that the city authorities were in error in enforcing the ordinance as to fire zone two for the reason that the cost of repairs, found to be $7,000, did not exceed fifty percent of the "sound value" of the building. This the Court adjudged to be approximately $16,000 or $17,000 at the time of the fire, and thus that the building was damaged to the extent "of probably forty percent of its sound value." The Court was of the opinion that reasonable prudence required the insureds to institute a mandamus proceeding to compel the issuance of the permit, but upon review of the times of holding court and the statutes of Mississippi with reference to such a proceeding, together with the probable time required for an appeal, he determined that it would have required at least fifteen months to have terminated such litigation. He concluded, however, that since the city authorities had, even if erroneously, refused to issue a permit, any attempt by the insureds to repair would have been violative of an ordinance of the city forbidding any repair without a permit, and that the existence of this ordinance and the practical certainty of its enforcement brought the rental loss within the endorsement of the policy. He thereupon awarded judgment in favor of the insureds for $4200, the total loss insured under the provision of the usual rent endorsement which restricted recovery to the actual annual rentals for the rented portion of the premises "when such loss shall happen." One of the quarters was unoccupied at the time of the fire. He determined that the claim for reformation was without merit, and denied it. The insurance company vigorously argues that the judgment was erroneous, and in no event should be for more than three months' rent, the period estimated necessary to make the repairs without regard to the question of the permit, insisting that since, as found by the Court, there

was no ordinance of the city which prevented the repairs to the property, the acts of the city officials in denying the permit were unjustified and illegal, and therefore not the enforcement of a valid ordinance, within the terms of the endorsement; and that the Court erred in holding that the insureds could recover loss due to the failure and refusal of the city to issue a permit when such action was illegal and without cause or justification and not in the enforcement of a valid ordinance or statute. Counsel for appellant further asserts that the force given by the Court to the ordinance forbidding repairs without a permit, in effect granted the plea for reformation, which was expressly denied by the Court's conclusions of law. The insureds in reply contend, that whether the city authorities were right or wrong in withholding the permit, their action was neither arbitrary nor unlawful, and that therefore the issuance of the permit could not have been compelled by mandamus. By cross appeal, the appellants assign error upon the adoption by the Court in its conclusions of the test of "sound value" instead of "market value" of the building at the time of the fire, and consequent error in its conclusions of law that the permit to repair was wrongfully refused and that its issuance could have been compelled by mandamus. Error is further assigned upon the failure of the Court to award judgment for the full amount of the face of the policy.

We think the Court reached the right result in awarding judgment for $4200, and we therefore find no cause for reversal in the assignments of errors urged by the appellant. While we agree with the cross-appellees upon their main contentions, we think the Court properly computed the amount of rentals lost for which the insureds were entitled to be compensated.

The intention of the insurer and the assureds, and the true nature and extent of the risk insured against, is clearly evidenced by the recitals of the policy heretofore set forth in the footnotes, which progressively extend insurance coverage, when they are considered in the light of matters which the parties must be assumed to have known. Thus, the usual endorsement insuring loss of rents, which by its terms computed such loss upon the basis of the time reasonably necessary to reconstruct, uninfluenced by the necessity of compliance with any governmental regulation, was not sufficient to provide the coverage the insureds desired, and additional coverage was provided. The building was in a city having in force zoning ordinances, of varying application, with the fact of their applicability in any case being dependent upon the location of the building and the result of the exercise of judgment by those in charge of enforcing the zoning regulations in determining whether, in any particular situation, the issuance of a permit for building or repair was authorized by the terms of the ordinances. It was likewise known that by the terms of such zoning ordinances it was entirely possible, and indeed likely, that if the building sustained any substantial loss as the result of fire the insureds could not replace the building at all but would be forced to demolish it, and consequently would lose not only one year's rentals, as provided by the policy, but additional rentals caused either by their financial inability to erect a structure complying with the requirements for new buildings, or because of the time which might be required to obtain the necessary materials and labor for such construction. Likewise knowledge that no repairs or rebuilding could be done at all until a permit therefor had been obtained, must be assumed. The terms of the policy and its endorsements evidence a contract of insurance which in case of loss of rents occasioned by fire, required the insureds in good faith, and with reasonable prudence, as one who desired to restore the building to its former condition would exercise, to make proper application and attempt to secure from the proper authorities a permit to make such restoration. If such effort be made, a determination by the building authorities of the city, made in good faith, in the exercise of an informed judgment, under all of the facts known to such authorities, (especially where a question of value is the primary one), which finds a reasonable basis for support in the terms and provisions of a

city ordinance, concludes the question of insurance coverage. A loss of rentals resulting from such a determination is, within the terms of the endorsement, "occasioned by the enforcement of any State or Municipal law or ordinance regulating the construction and repair of buildings and in force at the time such loss occurs." Such a provision does not contemplate that the actual and conclusive effectiveness of the law or ordinance to prevent repairs or replacements, as determined only by a Court of last resort, and as the result of protracted litigation, shall be the test by which liability is ascertained. It does not impose upon the insureds an obligation to compel the issuance of a building repair permit. The existence of insurance coverage depends upon whether the application of the insureds and the determination of the building authorities, meets the standards we have outlined above. In the present case the finding by the Court that the insureds, as well as the insurance company, proceeded in good faith to procure a building repair permit is supported by the evidence. There was a mistake upon the part of the assistant city engineer in his first determination that the building was in fire zone one, and at that time he appraised the value of the building at $20,000. The mistake was shortly discovered and this appraisal of value was not accepted by his superior, the city engineer. In view of the widely divergent evidence of value of the building, it is clear that here there was the proper basis for the exercise of a sound and honest judgment that the cost of repairs necessary to restore the building to its former condition exceeded fifty percent of the value of the building, and consequently, that the issuance of a per-

mit therefor was prohibited by the terms of § 65 (a) [4] of the ordinances of the City of Jackson, and § 187 (c) [5] of the Building Code of the City of Jackson. It is conceded by the insurance company that if the cost of repairs had exceeded fifty percent of the value of the building, the denial of the permit was proper. It is true that the insurance policy, as such policies usually do, makes sound value the criterion of measuring loss. Here, however, we are not measuring loss under the policy, but under the city ordinances. The ordinances refer only to "value." In the course of the trial whenever the question of value arose, the insureds objected to the use of "sound value" in determining the applicability of the ordinance, contending that the word "value," used alone in the ordinance, should be construed to mean market value. The question here is not as to the computation of loss under the policy predicated upon any sound value, but upon the reasonableness of the application of the terms of the city ordinances so far as the issuance of a permit for repairs are concerned. The term "value" whenever used in statutes or contracts is generally held to mean market value. We recognize the difficulty of determining the "value," apart from land value, of a residence building located in the twilight zone of not yet a business, and yet not a residential, section, but leased to commercial tenants, in view of the fact that the most valuable use of the lot itself is for the erection of a business structure not at all of the type of the building presently upon it. But we do not think that "sound value" is the proper criterion. The "market value" of such a building is difficult of ascertainment, but no more so than is

4. "Major Alterations and Repairs. If alterations and/or repairs in excess of 50 per cent of the value of an existing building are made to such building within any period of twelve months, the entire building shall be made to conform with the requirements given herein for new buildings. Any existing building which for any reason whatsoever, requires repairs, at any one time, in excess of 50 per cent of the value thereof, not deducting from such value any loss caused by

fire or any other reason, shall be made to conform to the requirements of this Code or shall be demolished, except as specified in Section 186."

5. "Any building in Fire Zone No. 2 which is enlarged, altered, raised or built upon to an extent exceeding an expenditure of 50 per cent of the value of such building shall be made to comply with the requirements of a new building in such fire zone."

often experienced in estimating "just compensation" in eminent domain proceedings.[6]

In the present case, the insurance company, apparently as a side issue to discredit the *bona fides* of the efforts of the insureds to secure a building permit, sought and obtained testimony that the witness "had rather have $5,000.00 than the building." Furthermore, even in ascertaining "sound value," it is clear that allowance should be made for economic depreciation. This factor was taken into account by one witness who estimated a reasonable sound value of $9,000, but was not considered in the estimates of other witnesses, nor apparently by the Court. It was also shown by the evidence that many such buildings, similarly situated, had been given away to avoid the cost of their demolition and removal. All in all, it is clear from the evidence that there is ample support for a good faith determination, in the exercise of sound judgment, that the costs of repairs necessary to restore the building would exceed fifty percent of its value. Consequently, the refusal to issue the building permit was neither arbitrary nor unreasonable, and from this follows the event insured against, that is, that the loss of rentals was occasioned by the enforcement of a municipal ordinance in force at the time of the loss. Since we rule this question against the contention of the insurance company, no good purpose could be served by any discussion of the propriety of the Court's conclusion that the existence of the ordinance forbidding repairs unless a permit had been obtained from the building authorities, in itself brought the case within the terms of the endorsement.

While the demolition and increased cost of construction clause of the policy greatly enlarged the coverage of the policy as to the event occasioning the loss of rents, it in no way effected a change in the manner in which the amount of loss was to be computed as contained in the provisions of the usual rent endorsement. As before stated, the terms of the insurance contract are to be construed and applied in accordance with the provisions of the policy and each of the endorsements. The applicable provision restricts the liability of the company to loss for no greater proportion thereof than the amount insured ($5,000) "bears to one hundred percent of the actual annual rentals for such occupied or rented portion of the premises when such loss shall happen." At the time of the fire one of the quarters was vacant. The rent then being received was $350 a month. On an annual basis this amounted to $4200, the amount awarded by the judgment of the Court.

Even though we do not approve all of the reasoning of the trial judge, he reached the right result, and consequently no reversible error appears. The judgment is

Affirmed.

---

6. See Miller v. U. S., 317 U.S. 369, 373, 374, 63 S.Ct. 276, 87 L.Ed. 336, 14 A.L.R. 55, and citations.