ALLEN ETC. *v.* VAN BUREN TOWNSHIP ETC., ET AL.

[No. 30,194. Filed June 26, 1962. Rehearing denied
April 26, 1963.]

666

*William F. Lawler, Jr.,* of Anderson, for appellant.

*Donald P. Jones, Harry T. Ice, David N. Brewer, Robert D. Risch, Robert D. McCord, Jr.,* and *Ross, McCord, Ice & Miller,* of counsel, all of Indianapolis, for appellees.

BOBBITT, J.—Appellant brought this suit to enjoin appellees, and each of them, from taking further action regarding the issuance of bonds to finance the construction and equipment of an elementary school in Van Buren School Township in Madison County, Indiana, for the alleged reason that the proposed amount of such bonds, together with all other outstanding indebtedness will exceed the two per cent debt limit in both the civil and school townships in violation of the provisions of Article 13, §1, of the Constitution of Indiana.

Trial was to the court on a stipulation of facts by the parties.

Pertinent facts stipulated are:

Plaintiff-appellant is a resident of and owner of taxable property located within both the Van Buren

civil and school townships, and brings this suit for himself and for and on behalf of all other resident taxpayers in such townships; that proper proceedings were instituted for the issuance of bonds of the school township in an amount not to exceed $100,000, and of the civil township in an amount not to exceed $95,000, for the purpose of procuring funds to pay the cost of construction and equipment of an elementary school building in such school township; that it is proposed to issue bonds of the school township in an amount of $76,000, and of the civil township in an amount of $71,000; that the school township has heretofore issued and has now outstanding bonds in the amount of $56,000, and the civil township has heretofore issued and has outstanding bonds in the amount of $61,000; and that the total net taxable property within the school township, as shown by assessments for taxes for the year of 1960, payable in 1961, is $3,152,350, and for the civil township, $3,152,350.

It is readily apparent from the foregoing that on the basis of two per cent of the net assessed valuation the bonding limit of the school township is $63,047, and of the civil township also $63,047.

The amount of bonds which could legally be issued under the two per cent limit, based on the net taxable property, is: school township—$7,047; and civil township—$2,047.

The injunction was denied, and this appeal followed.

The sole error assigned is the overruling of plaintiff-appellant's motion for a new trial, and we shall consider only Specification No. 1: "That the decision of the Court is contrary to law."

Appellant asserts that the limit of indebtedness upon a political or municipal corporation pursuant to Article 13, §1, of the Constitution of Indiana, *supra*, is two per cent of the net assessed valuation of taxable property within such political or municipal corporation and not two per cent of the "actual or true value" as contended by appellees.

Appellees rest their position upon the validity of Acts 1961, ch. 122, §2, which appellant asserts is invalid and void as being in violation of the provisions of Article 13, §1, *supra*, which is as follows:

> "No political or municipal corporation in this State shall ever become indebted in any manner or for any purpose to an amount in the aggregate exceeding two per centum on *the value of the taxable property within such corporation, to be ascertained by the last assessment for State and county taxes,* previous to the incurring of such indebtedness; and all bonds or obligations, in excess of such amount, given by such corporation, shall be void: . . . ." (Our italics.)

Chapter 122, *supra*, provides that whenever a school corporation, municipal corporation or political subdivision proposes to issue bonds, it shall obtain from the county auditor a certificate indicating the value of taxable property which shall be certified as follows:

> "a. The total assessed valuation of such taxable property shall be set out;
>
> "b. The percentage used in converting the value of property into assessed valuation as provided by Chapter 316 of the Acts of 1959 shall be applied to such assessed valuation in such a manner as to derive the valuation to be used as a base for limiting the bonding power of such corporation, as contemplated in Article 13, Section 1, of the Constitution of the State of Indiana and as used in Chapter 316, Acts of 1959."

Chapter 316 of the Acts of 1959 provides for the reassessment, for taxation purposes, of all real estate and improvements thereon in 1961 and every eight years thereafter. Section 5[1] of this Act provides that the rate of assessment shall be thirty-three and a third per cent of the "true cash value" of the real estate and improvements thereon, which the assessing officials shall determine from forms and standards adopted and promulgated by the State Board of Tax Commissioners, as of March 1 of the year preceding the making of any periodical reassessment.

The determinative question here is whether the two per cent debt limitation is to be based upon the true cash value or upon the assessed value which is one-third of the true cash value.

If the two per cent debt limitation must be based upon the "assessed value" then the trial court erroneously denied the injunction and the proposed bonds may not be issued because they would exceed the constitutional bonding limit of both the civil and school townships.

Prior to 1949 all property in Indiana was, by statute, required to be assessed at its true and actual value.

The question here presented is one of first impression in this State.

Four other jurisdictions with practically identical constitutional provisions have considered the question with which we are faced in the present case. Three of them, Iowa, Utah and Washington, support appellees' position here, and the State of Illinois supports the position of appellant.

---

1. Ch. 316 of the Acts of 1959 was repealed by §2011 of ch. 319 of the Acts of 1961. See: Acts 1961, ch. 319, §109, for re-enactment of this provision.

The question was before the Supreme Court of Iowa in *N. W. Halsey & Co.* v. *City of Belle Plaine* (1905), 128 Iowa 467, 104 N. W. 494, and *Miller* v. *City of Glenwood* (1920), 188 Iowa 514, 176 N. W. 373; and before the Supreme Court of Utah in *Board of Education* v. *Passey* (1952), 122 Utah 102, 246 P. 2d 1078, and *State* v. *Spring City* (1953), 123 Utah 471, 260 P. 2d 527; and the Supreme Court of Washington in *Hansen* v. *City of Hoquiam* (1917), 95 Wash. 132, 163 Pac. 391, and *Schoen* v. *City of Seattle* (1921), 117 Wash. 303, 201 Pac. 293.

We are not impressed with the reasoning in these cases. While well-reasoned opinions from other jurisdictions may be persuasive in the determination of a new question of law they are, however, not conclusive. We are, for the reasons which will presently appear, not persuaded by the reasoning in the decisions upon which appellees rely, and accordingly we decline to adopt the result which they have reached.

Section 1 of Article 13, *supra*, of the Constitution of Indiana was adopted as an amendment to the Constitution in 1881, and was proposed at a time when towns, cities, townships and counties were overburdened with debt as the result of extravagant spending in the Reconstruction Era and the cry came from townships, cities and towns for protection against increased debt and taxation.

Our Constitution provides that the "General Assembly shall provide, by law, for a uniform and equal rate of assessment and taxation, . . . ." Article 10, §1, Constitution of Indiana.

Although the statutes pertaining to the assessment of property have, from the time of the adoption

of §1 of Article 13, *supra*, of the Constitution of Indiana, to 1949, provided that property should be assessed at its "true cash value," it is common knowledge and a fact of which we take judicial notice, that assessing officials have always assessed property at a part only of its "true cash value," and we see no reason why the Legislature should not add some uniformity to this method of assessment by requiring that all real' estate and improvements thereon shall be assessed at a fixed per cent of its true cash value as determined by standards fixed in the statute,[2] thus eliminating inequalities which have existed between the various taxing districts within the State.

Since the adoption of the amendment in 1881, the two per cent limit on bonded indebtedness has, without exception, been determined and calculated in Indiana by taking two per cent of the net assessed valuation of the property, for taxation purposes, within the unit issuing the bonds. This has been the customary practice in all governmental units, and with attorneys who have approved the validity of the bonds, and with the full knowledge of taxpayers, attorneys and officials involved, that the value of the property to which the two per cent limitation was applied, was less than its true cash value.

A recognition of this custom of accepting the assessed value as the basis for determining the two per cent limit of indebtedness is also to be found in the decisions of this court.[3]

---

2. Acts 1959, ch. 316, §5. See Acts 1961, ch. 319, Article 14, p. 927.

3. See: *Rappaport v. Dept. of Public Health* (1949), 227 Ind. 508, 87 N. E. 2d 77, 88 N. E. 2d 150; *Brown v. Guthrie, Auditor* (1916), 185 Ind. 669, 114 N. E. 443; *Edwards v. Housing*

· While the custom and practice of using the net assessed value of taxable property as the basis for calculating and ascertaining the limit of indebtedness pursuant to Article 13, §1, *supra*, is not binding upon us, however, because this practice has been consistently followed by the administrative officers involved, accepted by attorneys who have approved the legality of bond issues for the past 70 years, and accepted for more than 80 years by the general public and the Legislature, they are forcibly persuasive and are entitled to great weight in the interpretation of the provisions of Article 13, §1, *supra,* here in question. *Sutto* v. *Board of Medical Registration* (1962), 242 Ind. 556, 180 N. E. 2d 533; *Romero* v. *International Term. Operat. Co.* (1959), 358 U. S. 354, 3 L. Ed. 2d 368, 381, 79 S. Ct. 468 (Rehearing denied, 359 U. S. 962, 3 L. Ed. 2d 769, 79 S. Ct. 795.

In attempting to determine the meaning intended by the framers of the Constitution of our State by the use of the phrase, "to an amount in the aggregate exceeding two per centum on the value of the taxable property within such corporation, to be ascertained by the last assessment for State and county taxes," we must consider the phrases in their entirety and cannot be guided solely by the meaning of the word *value* standing alone.

We are also governed by the rule of construction enunciated by this court in *State ex rel.* v. *Grant*

*Authority of City of Muncie* (1939), 215 Ind. 330, 19 N. E. 2d 741; *Dept. of Pub. Sanitation* v. *Solan* (1951), 229 Ind. 228, 97 N. E. 2d 495; *Becker et al.* v. *Albion-Jefferson School Corp. et al.* (1956), 235 Ind. 204, 132 N. E. 2d 269; *Martin* v. *Ben Davis Conservancy Dist.* (1958), 238 Ind. 502, 153 N. E. 2d 125; *Book* v. *Board of Flood Control Comrs. etc. et al.* (1959), 239 Ind. 160, 156 N. E. 2d 87.

*Superior Court* (1930), 202 Ind. 197, at page 210, **172** N. E. 897, 71 A. L. R. 1354, which is as follows:

> "It is to be presumed that the Constitution was carefully made, and that every word in it was carefully chosen to express the intention of the constitutional convention, and especially to express any limitation on a power granted by it unless expressed in such language readily and easily interpreted by any of the citizens under its authority."

The "value of taxable property" on which the two per cent limit is based is "to be ascertained by the last assessment for State and county taxes." The *value* is "to be ascertained"—how?—*"by the last assessment."*

Ascertain is defined by A New English Dictionary on Historic Principles, Vol. 1, Part 1, p. 483, as "to render certain"; "establish as a certainty"; "to establish"; "to fix"; "to determine"; and by Webster's Third New International Dictionary as "to establish"; "determine with certainty"; and "to make certain—exact."

The Constitution does not say that the value for the purpose of determining the two per cent debt limitation shall be the true or actual value of property as determined or ascertained by using the assessed value as the basis for computing the true cash value—but that it is to be ascertained or determined by the last assessment for State and county taxes. If the Legislature, in drafting and proposing a constitutional amendment which resulted in Article 13, §1, *supra,* of the present Constitution, had intended that the "true cash value" be used as the basis of determining the debt limit instead of a value to be ascertained by assessment figures, they could have so stated in the amendment.

In our judgment the phrase "by the last assessment" is used in the sense of comparison, as "by the yard," "by the year," or "the weight of the load' of coal is to be ascertained by deducting the weight· of the truck from the gross weight of the load."

In expressions involving comparison, the word "by" is defined to mean "to the amount of"—"indicating an amount." Webster's New International Dictionary, Second Edition.

We choose to follow the well-reasoned opinion in *City of Chicago* v. *Fishburn* (1901), 189 Ill. 367, 59 N. E. 791, in which the Supreme Court of Illinois, in considering the meaning of a provision of the Constitution of Illinois, which is identical in its provisions to the one here under consideration and is as follows:

> "[O]n the value of the taxable property therein, to be ascertained by the last assessment for state and county taxes, previous to the incurring of such indebtedness.";

held that in ascertaining the value of the taxable property in the City of Chicago, by the last assessment, the limit of indebtedness is to be based upon the assessed value, which was one-fifth of the full value.

The provisions of our Constitution being identical to those in the Constitution of Illinois, the reasoning of the Supreme Court of Illinois in the City of Chicago case applies with equal force to the present case here.

At pages 793-794 of 59 N. E. it is stated:

> "But it is urged by counsel· for appellants that the word 'value,' used in the constitution, must mean actual value; that any attempt of the legislature to direct assessing officers to take one-fifth of such value as the assessed value is void; and that, inasmuch as the statute provides

for a determination of such actual value, it must be held to be a basis of the limitation. The central and dominant idea of the constitution in the assessment of property for taxation and in the payment of taxes is uniformity and equality, but we find no provision which prevents the legislature from fixing the assessed value at less than full value. Justice and uniformity between taxpayers may be as well secured by a proportionate basis, and, while the value cannot be fixed by the legislature, it is within the legislative power to enforce the provision for uniformity by any proportionate rule. Assessors had always assessed property at a part only of the full value, and we see no reason why the legislature may not prevent the varying methods by which property was assessed unequally between different counties and municipalities of the state, by enforcing a fixed and uniform rule. So long as the correct proportion between the different subjects of taxation is maintained there is no language of the constitution which limits the legislative power to prescribe a basis for the action of the assessors."

Appellees further assert that because property was assessed at its "fair cash value" at the time of the adoption of Article 13, §1, *supra,* it must have been contemplated that municipal corporations and political subdivisions could incur indebtedness up to two per cent of the fair cash value of the property within their boundaries, and it was never intended that this limit could be changed by the Legislature.

There is no provision in our Constitution which ■ prohibits the Legislature from fixing a bonding limit less than two per cent.

Article 13, §1, *supra,* provides only that indebtedness may not *exceed* two per cent on the value of taxable property, etc. It does not say that the Legislature may not make the limit one per cent, or two-thirds of one per cent, as appellees contend will be the effect

of holding that the limitation is based on the net assessed value.

If the Legislature has the power to reduce the debt limit below two per cent by fixing a smaller percentage, then it must follow logically that it can reduce the debt limit by requiring that property be assessed at one-third of its true cash value as was provided by Acts 1959, ch. 316,[4] §5, p. 819.

Article 13, §1, *supra,* fixes a *maximum* limit not a *minimum* limit. It did not restrict the power of the Legislature to fix a limit lower than two per cent of the value of taxable property to be determined as provided in this section of the Constitution.

It is suggested here that to impose the debt limit on the assessed value (one-third of the true cash value) would require increasing resort to more expensive means in order to finance needed public improvements; while to hold that the true cash value, as provided by Acts 1961, ch. 122, §2, *supra,* is the basis upon which the two per cent limit should be computed, would minimize the need of local governments to resort to more costly methods of financing new improvements.

While courts in some jurisdictions may resort to such reasoning in order to provide the means to impose additional indebtedness on the local taxpayers, this court is not yet ready to adopt the philosophy that the end justifies the means, and we refuse to decide constitutional questions upon such a basis.

We still adhere to the principle expressed in *Gross Income Tax Div.* v. *Surface Comb. Corp.* (1953), 232 Ind. 100, at page 136, 111 N. E. 2d 50, as follows:

4. See Note 1 on page 670.

"It has been suggested that because, 'The increasing social burdens assumed by our governments, both State and national, will require increasing and more searching taxation for their support,'[5] we should follow the present trend of some of our courts and steer our course by principle rather than by precedent, in order to sustain questionable taxes when imposed and extended in an effort to secure additional revenue. We are not impressed with this suggestion, nor are we disposed to cut loose the moorings of the past and embark upon an uncharted sea without regard to precedent and with only the wavering compass of ever-shifting needs to guide us into uncharted seas, in order to meet the expense of increased burdens being assumed from year to year by our state and national governments. Principles never change, but their application may be varied to meet the needs of an advancing society. However, this does not require, or permit, a distortion of principles and time-honored precedents merely to satisfy the lust of a greedy and overindulgent, benevolent government;"

and in our judgment the principle above expressed is applicable to the situation here.

It is our judgment that "the value of the taxable property" within the meaning of Article 13, §1, *supra,* is the *assessed value* of the property as determined by the last complete assessment for State and County taxes, previous to the incurring of the proposed indebtedness.

Section 2 of ch. 122 of the Acts of 1961, attempts to effect an increase in the bond limitation in contravention of the limit fixed by Article 13, §1, *supra,* and is, therefore, invalid and void.

5. *Stone* v. *York Ice Machinery Corporation* (1942), 193 Miss. 638, 10 So. 2d 380.

If appellees desire to increase the bonding limit of local units of government in Indiana, their remedy is by amendment to the Constitution of the State of Indiana and not in this court.

Since the issuance of the proposed bonds would exceed the two per cent debt limitation of both the Van Buren School and Civil Townships, without including the advance of $137,000 from the Veterans Memorial School Construction Fund to the Van Buren School Township, pursuant to Acts 1955, ch. 312, being §28-175, *et seq.*, Burns' 1961 Cum. Supp., it is not necessary to consider whether or not such advance is a debt of the school township within the provisions of Article 13, §1, *supra.*

Because the proposed bond issue, when added to the present indebtedness of each, would exceed two per cent of the assessed value of the taxable property in both the Van Buren School and Civil Townships, the trial court erred in denying the injunction sought by plaintiff-appellant and its decision is, therefore, contrary to law.

The judgment of the trial court is reversed, and since a new trial would serve no useful purpose, the trial court is instructed to issue the injunction as prayed.

Judgment reversed with instructions.

Arterburn, C. J., and Jackson, J., concur.

Achor, J., concurs with opinion.

Landis, J., dissents with opinion.

## CONCURRING OPINION

ACHOR, J.—Article 13, §1 of the Indiana Constitution provides:

"No political or municipal corporation in this State shall ever become indebted in any manner or for any purpose to an amount in the aggregate exceeding two per centum on *the value of the taxable property within such corporation, to be ascertained by the last assessment for State and county taxes,* previous to the incurring of such indebtedness; and all bonds or obligations, in excess of such amount, given by such corporations, shall be void: . . ." [My italics.]

It occurs to me that, notwithstanding arguments to the contrary, the phrase "the value of the taxable property . . . ascertained by the last assessment for . . . taxes," can mean only the valuation ascertained and entered by the assessing officers and entered for tax purposes.

The fact that the legislature has directed that this amount be fixed at a percentage of actual value does not alter the limitation, as clearly stated in the constitution.

If the legislature is of the opinion that the base which limits the bonding authority of school corporations, etc. should be enlarged (as provided by Chapter 122 of the Acts of 1961), this purpose can be achieved by either directing that property be assessed at more nearly its true cash value or by initiating a constitutional amendment which would authorize a bonded indebtedness of *more than* "two per centum on the value of taxable property . . . ascertained by the last assessment for . . . taxes," as is now provided by Art. 13, §1, *supra.* The result cannot be accomplished by a legislative declaration which provides, in substance, that *actual value,* rather than *assessed value,* shall be used as a base for limiting the bonding power of a municipality.

Neither can the result properly be accomplished by judicial construction of the constitution in a manner contrary to the established meaning of its expressed provisions, in order to accomodate a present situation which members of the court are persuaded the constitution would have been made to accommodate had the same condition existed at the time of the adoption of the applicable constitutional provision.

Although by common usage, the meaning of the terms used in the constitution may be altered by social economic and political change, the judiciary has no authority itself to alter or pervert the meaning of terms clearly expressed in the constitution in order to accomplish what is presently considered to be a desired result. If our constitutional form of government is to be preserved such changes must be made by constitutional amendment. Only in this manner can it be ascertained that such changes in the fundamental law of the land are in accord with the clear and considered will of the people.

### DISSENTING OPINION

LANDIS, J.—The sole question for decision in this case is whether the 2% debt limitation provided for in Article 13, §1 of the Constitution of Indiana[1] is based

---

1. "Limitation on indebtedness—Excess void.—No political or municipal corporation in this State shall ever become indebted in any manner or for any purpose to an amount in the aggregate exceeding two per centum on the value of the taxable property within such corporation, to be ascertained by the last assessment for State and county taxes, previous to the incurring of such indebtedness; and all bonds or obligations in excess of such amount, given by such corporations, shall be void: Provided, That in time of war, foreign invasion, or other great public calamity, on petition of a majority of the property owners, in number and value, within the limits of such corporation, the public authorities, in their discretion, may incur obligations necessary for the public protection and defense, to such an amount as may be requested in such petition."

upon the true cash value of the property or upon its assessed value, which is one-third of the cash value.

The question presented in this case is a matter of first impression in this state, and it is therefore appropriate for us to look to the decisions of courts of other states to ascertain how the matter has been considered in such jurisdictions.

An examination of such cases reveals that the same question here before us for decision has been considered in seven different court decisions from four jurisdictions in this country, and that six out of seven of the opinions handed down have held virtually identical constitutional provisions to refer to the cash value of property rather than its assessed value.[2]

The majority opinion relies heavily on the earliest of these decisions handed down about the turn of the century and rejects the persuasive reasoning of the subsequent six decisions which held to the contrary and adopts a narrow construction of Art. 13, §1, so as in effect to restrict the bonding power of municipal or political corporations of this state to one-third of 2% or two-thirds of 1%.

It will be noted that the constitutional provision in question *does not state* the limitation shall be *the assessed value* of the taxable property but rather *the value* of the taxable property to be determined by the assessment. As stated in the most recent case

---

2. *Miller* v. *City of Glenwood* (1920), 188 Iowa 514, 176 N. W. 373; *Halsey & Co.* v. *Belle Plaine* (1905), 128 Iowa 467, 104 N. W. 494; *State* v. *Spring City, et al.* (1953), 123 Utah 471, 260 P. 2d 527; *Board of Education, Rich County School Dist.* v. *Passey* (1952), 122 Utah 102, 246 P. 2d 1078; *Schoen* v. *Seattle* (1921), 117 Wash. 303, 201 Pac. 293; *Hansen* v. *Hoquiam* (1917), 95 Wash. 132, 163 Pac. 391.

The only contrary decision is the earlier case of *City of Chicago* v. *Fishburn* (1901), 189 Ill. 367, 59 N. E. 791.

cited in footnote 2 (*State* v. *Spring City et al.* (1953), 123 Utah 471, 477, 260 P. 2d 527, 531) :

> ". . . the figure to be used in determining the debt limitation is the full value of the property computed from the assessor's . . . figure. . . . This view is in accord with decisions in Iowa, *N. W. Halsey & Co.* v. *City of Belle Plaine,* 128 Iowa 467, 104 N. W. 494, and Washington, *Hansen* v. *City of Hoquian,* 95 Wash. 132, 163 P. 391, where similar constitutional and statutory provisions prevail.

. . . . .

> " 'The language of Article XIV, Sec. 4 is clear and unambiguous. It establishes as a debt limitation "four per centum of the value of the taxable property" in the district. The word "value" is not limited or qualified by any adjectives. It does not read "assessed value" or specify any other particular kind of value. The word "value" standing by itself can have only one meaning, viz. the full worth of [sic] [or] actual value—not a fractional share thereof.' "[3]

The term "value" has been held by numerous authorities to be equivalent to or synonymous with "cash value" (See: 14 C. J. S., p. 22, note 87), "market value" (See: 55 C. J. S., p. 798, note 90, p. 799, note 93), and "reasonable cash market value" (See: 14 C. J. S., p. 23, note 14). See also the recent decision of the U. S. Circuit Court of Appeals of the Fifth Circuit, stating that the term "value" as used in the statutes or in contracts is generally held to mean "market value." *World Fire and Marine Ins. Co.* v. *Palmer* (5th Cir., 1950), 182 F. 2d 707, 711, 17 A. L. R.

---

3. The contrary conclusion of the early Illinois decision relied on by the majority opinion has been criticised and rejected by the Supreme Courts of Iowa, Washington and Utah. See: *Halsey & Co.* v. *Belle Plaine* (1905), *supra; Hansen* v. *Hoquaim* (1917), *supra; Board of Education, Rich County School Dist.* v. *Passey* (1952), *supra.*

2d 1217, 1225, cert. den. 340 U. S. 852, 71 S. Ct. 81, 95 L. Ed. 624.

I submit the opinion of the majority in this case holding §2 of ch. 122 of the Acts of 1961 to be unconstitutional, is contrary to a reasonable construction of the Indiana Constitution and is contrary to the preponderance of authorities from other jurisdictions and unduly restricts the financial capacity and authority of political and municipal corporations of this state.

The judgment denying the injunction should be affirmed.

### ON PETITION FOR REHEARING

ACHOR, J.—The appellees have filed a petition for rehearing, asking the court to decide an issue presented in the case but not decided in our opinion.

Appellees call our attention to the fact that the mandate in the opinion handed down in this case instructs the lower court to issue the injunction "as prayed." [*Allen* v. *Van Buren Township of Madison County* (1962), 243 Ind. 665, 184 N. E. 2d 25, 32.] The prayer for relief asks that an injunction issue, preventing the

> "[e]xecuting, issuing, selling or offering for sale, or taking any further action in connection with the issuance of *any* bonds of Van Buren School Township of Madison County so long as the outstanding indebtedness of the School Township, *including the advance from the State of Indiana,* exceeds two per cent (2%) of the net assessed valuation of taxable property in the School Township;" [Our italics.]

Thus the injunction affirmed by this court enjoined the incurring of any indebtedness by the appellee School Township in excess of the constitutional two per cent (2%) debt limit and included in such calcu-

lation of indebtedness advancements made by the state from the school fund for construction purposes, as authorized by Acts 1955, ch. 312, §§1 and 11, p. 958, being §§28-175 and 28-185, Burns' 1962 Cum. Supp., as amended.

It is urged by appellees that such advancements are not an "indebtedness" to be included in the constitutional limitation and, as noted by appellees, the opinion as written did not discuss this aspect of the case. Appellees, in their petition for rehearing, asked that this issue be clarified. Because of its effect upon pending school finances, we agree that the opinion should clarify the law with respect to this issue.

Are advancements made under the act to schools for construction purposes an indebtedness on the part of the recipient school township or school corporation, which must be included in calculating the two per cent (2%) debt limitation described by the constitution? In support of their position that such advancements are not to be considered an obligation within the constitutional limitation, appellees cite and rely in part upon the legislative declaration contained in the statute:

> "Such advancement out of the state school tuition fund shall not be an obligation of the school corporation within the meaning of the constitutional limitation against indebtedness. . . ."—§28-182, Burns' 1962 Cum. Supp.

However, the answer to the question as to whether such advancements are or are not an obligation or indebtedness of the school corporation, within the meaning of the constitutional limitation, must be determined, not by mere legislative desire or declaration as expressed in the act, but by

the character of the obligation or transaction authorized by the act.

This court, speaking upon this issue, has adopted certain standards or tests by which we may determine whether the transaction is an indebtedness within the purview of the constitutional limitation, as follows:

> "Under its provisions bondholders, in case of default, have *no recourse* against the State of Indiana in its corporate sovereign capacity, or against any State fund. . . .
>
> . . .
>
> "The debt provisions of Art. 10, §5, of the Constitution of Indiana apply only to *legally enforceable obligations. Kees et al.* v. *Smith, Trustee, etc. et al., supra* (1956), 235 Ind. 687, 137 N. E. 2d 541; *Protsman* v. *Jefferson-Craig Consol. School Corp., supra* (1953), 231 Ind. 527, 109 N. E. 2d 889." *Book* v. *State Office Bldg. Comm. et al.* (1958), 238 Ind. 120, 140, 148, 149 N. E. 2d 273.

The statute with which we are here concerned contains the following provision regarding the method and obligation of payment:

> "Any school corporation receiving an advancement under the provisions of this act . . . shall agree to have the total amount of the money advanced plus one percent [1%] of the outstanding balance thereof deducted from the semiannual distribution of state school tuition support for a period of not to exceed twenty [20] years or until all of the money so advanced, plus one percent [1%] thereof, has been so deducted. . . ." §28-182, Burns' 1962 Cum. Supp., *supra.*

Thus it appears that under the statute the advancement is not made under terms which make it a "legally enforceable obligation" of such a character that in event of a default in payment the state may

have recourse in the courts in order to enforce repayment. The only method of repayment provided is that the state withhold from the school corporation a portion of the school's tuition fund otherwise available from the state, until the total amount advanced had been deducted. However, there is no assurance that the legislature will continue future distribution of the state school tuition funds over the prescribed period. Future sessions of the General Assembly cannot be bound as to such distributions, neither do local school corporations have a vested right therein.

Under the above stated circumstances, the advancement made lacks the essential characteristics of a "debt" in that there is no legal obligation to repay the same. Such an obligation is an essential characteristic of an indebtedness. *Austin* v. *Healy* (1941), 376 Ill. 633, 35 N. E. 2d 78; *State Office Building Commission* v. *Trujillo* (1942), 46 N. M. 29, 120 P. 2d 434; *Preston* v. *Clements* (1950), 313 Ky. 479, 232 S. W. 2d 85. See generally, Words and Phrases, Vol. 11, pp. 297-311.

It is true that the school corporations which receive such advancements are authorized to levy a tax, if they see fit, for additional school revenue equal to the amount of state school tuition funds withheld in satisfaction of the advancement, but there is no obligation whatsoever on the school corporation to levy any taxes for such repayment. The test is whether there is any *obligation* to pay the advancement by a tax levy or, otherwise, whether an additional tax could *voluntarily* be levied by reason of such advancement.

The Attorney General rendered an opinion with respect to such advancements, in which we concur, as follows:

"When we analyze the statute under consideration, it is apparent there has been an advancement to the school corporation, by the State of Indiana of that revenue which the state ordinarily would thereafter, over a period of years, distribute to the school corporation as state support to the public school system of the state. It is more in the nature of an advancement, rather than a loan. It is to be liquidated by deductions from future tuition and school support over a period of years, in an amount somewhat dependent upon the amount of the advancement and the agreement of the parties. No direct taxes are [required] to be levied by the local school corporation in payment of such installments; ...

"[N]o payment is required, instead there is a deduction made by the state from monies to be subsequently distributed by it; and any replacement of such amount for the operation of the school system, under its budget, is currently raised each year by an additional tax rate for such purpose.

"I am of the opinion an advancement of funds made pursuant to the Act in question does not constitute a portion of the school corporation's indebtedness within the meaning of the Indiana Constitution, Art. 13, Sec. 1." 1956 Opinions of the Attorney General, pp. 95, 98-99. See also: 1959 Opinions of the Attorney General, pp. 104, 111-113.

The mandate in the original opinion is modified to provide that an injunction shall issue, which shall provide that no bonds shall issue in excess of the two percent (2%) limitation calculated, in accordance with the construction of the constitution, as set forth in this opinion, and in the determination of the existing indebtedness of the school township, the advancements from the state fund, as authorized by the Acts of 1955, ch. 312, as amended, *supra*, shall not be considered as an indebtedness within the meaning of the constitutional limitation.

Petition for rehearing denied.

Jackson, C. J., concurs in the result.

Arterburn, J., concurs.

Landis, J., dissents, with opinion.

Myers, J., not participating.

## DISSENTING OPINION ON REHEARING

LANDIS, J.—Appellees in their brief in support of the petition for rehearing ask the Court to:

> "(1) Clarify the confusion created by the Court's statement in the [majority] opinion that it was not ruling upon the status of the advancement from the Veterans Memorial School Construction Fund, while [at the same time] mandating the lower court to enjoin the issuance of 'any' bonds which was proper only if the advancement is a debt.
>
> "(2) Clarify the confusion created by the reference in the opinion to the controlling assessment as the one *'in the year previous* to the incurring of the indebtedness.'
>
> "(3) Review the holding that assessed value, not true value, of property is controlling under the Constitution [of Indiana]."

The majority on rehearing has modified its original opinion as to (1) above to hold that advancements pursuant to Ch. 312 of the Acts of 1955, as amended, to the appellee school township should not be considered as an indebtedness within the meaning of Art. 13, §1 of the Indiana Constitution. I agree with such modified opinion that such advancements are not a debt within the constitutional limitation.

The original opinion has heretofore been modified as to (2) by striking out the reference in the opinion to the controlling assessment as being "in the year previous to the incurring of the indebtedness" and

substituting therefor a reference to the last assessment previous to the incurring of indebtedness.

In regard to (3), it should be noted as stated in my previous dissenting opinion, that Art. 13, §1, of the Indiana Constitution does not state the debt limit shall be two percent of the assessed value of the property but rather two percent of the value of the taxable property to be determined by the assessment.

As appellees have pointed out in their brief on rehearing, whether the word "value" as used in Art. 13 means "actual value" or "assessed value," it would necessarily be ascertained by reference to the last assessment for taxes, as the assessment for taxes is the only official index to the property values within a municipal corporation. The assessed valuation is thus made the basis for making certain of the actual value of property.

Appellees on rehearing pose the question: "Why [if 'assessed value' is to be the criterion] did the drafters of Art. 13 use the somewhat awkward phrase 'value of taxable property to be ascertained by the last assessment' rather than last 'assessed valuation' of property?"

As indicated in my previous dissent the word value "has been generally held to mean cash value," market value, reasonable cash market value.

Citing authorities. See also: Words and Phrases (Vol. 44, Value, 1962 Ed., pp. 56-94) to the effect that value generally means true value, cash value, or actual value.

It is readily apparent that it would have been entirely redundant and superfluous for the constitutional provision to have contained the word "actual" as a modifier of the word "value" for "value" to

receive its normal interpretation of "actual value." Yet that is the strained construction placed upon it by the original majority opinion in this case.

Not only is the original opinion of the majority of the Court a narrow and illogical limitation of the words used in the Indiana Constitution, but its effect, as pointed out by appellees is to place upon the taxpayers, in order to procure needed school construction and other improvements required of local municipalities, the further expense of forming additional building corporations and floating bonding issues at higher interest rates than would be required if existing municipal or school corporations could be utilized which have the financial stability of a taxing authority.

Both upon the basis of reason and legal precedent this Court should not by its decision in this case put an illogical limitation on Art. 13, §1, of the Indiana Constitution upon the sole authority of the early Illinois case of 1901 which has since been repudiated by all six decisions of courts of last resort thereafter to consider the question.

I submit that §2, ch. 122 of the Acts of 1961, providing for the determination of the valuation base according to a method predicated upon actual or cash value rather than assessed value, is not contrary to a reasonable construction of Art. 13, §1, of the Constitution of Indiana, and that we should grant a rehearing of this case and affirm the judgment of the lower court.

NOTE.—Reported in 184 N. E. 2d 25.

Rehearing denied 192 N. E. 2d 316.